IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PITTSFIELD DEVELOPMENT, LLC, <br> PITTSFIELD RESIDENTIAL II, LLC, <br> and PITTSFIELD HOTEL HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THE TRAVELERS INDEMNITY COMPANY, <br><br> Defendant. | Case No. 18 C 06576 <br><br> Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Pittsfield Development, LLC ("Pittsfield Development"), Pittsfield Residential II, LLC ("Pittsfield Residential"), and Pittsfield Hotel Holdings, LLC ("Pittsfield Hotel"), have filed this lawsuit against Defendant, The Travelers Indemnity Company ("Travelers"), for breach of contract and, in the alternative, reformation of contract. Travelers has moved to dismiss certain of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). For the following reasons, Travelers's motion [36] is granted in part and denied in part.

### Background[1]

Pittsfield Development purchased the Pittsfield Building ("the Building"), located at 55 East Washington Street in Chicago, Illinois, in 2000. Am. Compl. ¶¶ 1, 12, ECF No. 25. The Building has since been divided into four separately deeded subdivisions, three of which are owned by Plaintiffs: Pittsfield Development owns and operates the ground floor, the basement, the

---

[1] The following facts are taken from the amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

subbasement, a portion of floor 22, and all of floors 23–40; Pittsfield Residential owns floors 10–12; and Pittsfield Hotel owns and operates floors 2–9. *Id.* ¶¶ 1–5, 8–9.

Travelers has been Pittsfield Development's insurance carrier since the purchase of the Building in 2000. *Id.* ¶ 14. Pittsfield Development obtained insurance for the Building through insurance brokers Carbone & Malloy, Inc. ("Carbone"). *Id.* ¶ 15. According to Plaintiffs, Carbone acted as Travelers's agent—not Plaintiffs'—in the course of these transactions. *Id.* ¶ 16.

Pittsfield Development's insurance policy from Travelers provides that any affiliated companies in which the first named insured maintains more than 50% ownership interest and has active management are additional named insureds, provided that the first named insured notifies Travelers within 90 days from when the affiliate or subsidiary company was acquired or formed. *Id.* ¶ 13. Plaintiffs allege, however, that while preparing insurance applications for Pittsfield Development, Carbone erroneously listed "Pittsfield Building, LLC" as the first named insured on the policy—but that entity does not exist and did not exist at the time the policy was first issued. *Id.* ¶¶ 18–19. Plaintiffs state that they repeatedly asked Travelers to correct this error, but it was never fixed. *Id.* ¶ 20.

Floors 2–9 of the Building were conveyed to Pittsfield Hotel in 2015, and Plaintiffs allege that Pittsfield Development timely notified Carbone of the change. *Id.* ¶ 22. Subsequently, in June 2016, Carbone prepared another application for insurance coverage (the "Application") for the Building. *Id.* ¶ 23. The Application again incorrectly listed Pittsfield Building, LLC as the first insured, and listed Pittsfield Development and Pittsfield Residential as additional insureds. *See id.*, Ex. 2 ("Application") at 2[2], ECF No. 25-2. Pittsfield Hotel was not listed on the Application, but the building description included "offices 2-8th flr's" and "9-12th apts," *id.* at 3, and Pittsfield

---

[2] Because Exhibit 2 is not consecutively paginated, the Court refers to the ECF page numbers at the top of each page.

Hotel owns floors 2–9. Am. Compl. ¶ 4. After receiving the Application, Travelers issued an insurance policy (the "Policy") covering the Building through July 2017. *Id.* ¶ 24. The Policy provided coverage for physical loss or damage to the Building, including floors 2–9. *Id.* ¶¶ 25–28. In accordance with the Application, the first named insured on the Policy was Pittsfield Building, LLC. *See id.*, Ex. 1 ("Policy") at 2[3], ECF No. 25-1.

Two pipes burst on the tenth floor of the Building on December 17, 2016, causing water damage to floors 1–10. Am. Compl. ¶¶ 33–34. Plaintiffs notified Travelers of the damage on the day it occurred. *Id.* ¶ 35. Travelers's claims adjuster inspected the property on January 23, 2017. *Id.* ¶ 38. In July 2017, Plaintiffs sent Travelers an estimate of their damages, in the amount of $8,592,961.40. *Id.* ¶ 41. The next month, Travelers sent Plaintiffs checks for $147,589.04 and $43,212.74, for partial payment of the damages. *Id.* ¶¶ 43, 45. It then sent a final check and estimate of damages to Plaintiffs in January 2018. *Id.* ¶ 46. Travelers estimated the total amount of damages at $401,537.95. *Id.* ¶ 46. Plaintiffs attribute the discrepancy between the two estimates to the fact that Travelers reportedly found that floors 2–9 were vacant when the damage occurred, and thus replacement costs could not be claimed for those floors. *Id.* ¶¶ 47–48. According to Plaintiffs, the floors were under construction, not vacant. *Id.* ¶ 48.

Plaintiffs filed this action, bringing claims for breach of contract (Count I) and, in the alternative, reformation of contract based on mutual mistake (Count II).

## **Legal Standard**

### I. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. "When ruling on a motion to dismiss for lack of subject-matter jurisdiction under

---

[3] Because Exhibit 1 is not consecutively paginated, the Court refers to the ECF page numbers at the top of each page.

[Rule] 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (quoting *Grafon Corp. v. Hauserman*, 602 F.2d 781, 783 (7th Cir. 1979)).

"[I]f the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction, the movant may use affidavits and other material to support the motion." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (emphasis in original), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2012). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *Id.*

## II. Federal Rules of Civil Procedure 12(b)(6) and 9(b)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

4

Moreover, allegations of mistake must be pleaded in conformance with Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Under Rule 9(b), in "averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* Such circumstances include the identity of the person who committed the fraud or mistake, the time, place, and content of the fraud or mistake, and the method by which it was communicated. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). This is also known as the "who, what, when, where and how" standard. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). This requirement ensures that defendants have fair notice of a plaintiff's claims, providing an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F. Supp. 1226, 1230 (N.D. Ill. 1990).

## Analysis

Travelers makes two primary arguments in support of dismissal. First, Travelers contends, Pittsfield Hotel's claims must be dismissed under Rule 12(b)(1), because Pittsfield Hotel lacks standing to enforce the Policy. Second, Travelers argues that Plaintiffs' reformation claim fails to meet the heightened pleading standard of Rule 9(b), and therefore that Count II should be dismissed under Rule 12(b)(6).

**I. Standing**

Travelers first challenges Pittsfield Hotel's standing as to Count I, arguing that it is a non-party to the Policy and cannot sue to enforce it. "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To have standing, a plaintiff must have suffered an injury in fact that is traceable to the defendant's conduct and is redressable by a favorable judicial decision. *Spokeo,*

5

*Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (quotation marks and citation omitted).

A defendant can raise two types of challenges to a plaintiff's standing: facial, which looks only to the allegations of the complaint; or factual, which acknowledges that the complaint has alleged a basis for subject-matter jurisdiction but contends "that there is *in fact* no subject matter jurisdiction." *Apex Digital*, 572 F.3d at 443–44 (quotation marks and citation omitted) (emphasis in original). When considering a factual challenge, a court may look beyond the allegations of the complaint and consider evidence that has been submitted on the issue. *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008). "Once such evidence is proffered, the presumption of correctness that we accord to a complaint's allegations falls away." *Apex Digital*, 572 F.3d at 444 (quotation marks and citation omitted). The burden then shifts to the plaintiff to provide "competent proof," which "requires a showing by a preponderance of the evidence that standing exists." *Perry*, 186 F.3d at 829.

Travelers's factual challenge to Pittsfield Hotel's standing rests on the premise that non-parties to contracts generally lack standing to bring breach-of-contract claims. *See Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 626 (7th Cir. 2011); *Apex Digital, Inc.*, 572 F.3d at 443–45; *Medina v. Pub. Storage, Inc.*, No. 12 C 00170, 2014 WL 1715517, at *4 (N.D. Ill. Apr. 30, 2014). In support of its position, Travelers points to the Policy and the Application—the documents at the heart of Plaintiffs' breach-of-contract claim—neither of which mentions Pittsfield Hotel. *See generally* Policy; Application. This suffices to call Pittsfield Hotel's standing into question. *See Laurens*, 868 F.3d at 626 (stating that the defendant successfully challenged the

6

plaintiff's standing as a factual matter by providing the purchase agreement on which the plaintiff's name did not appear). As a result, Plaintiffs carry the burden to provide competent proof that Pittsfield Hotel is in fact an insured party under the Policy and thus has standing to sue for its enforcement.

To meet this burden, Plaintiffs contend that (1) Travelers ratified Pittsfield Hotel as an insured party by accepting premium payments on the Policy made on behalf of Pittsfield Hotel; (2) Travelers has waived any objection to the Policy by making partial payments on Plaintiffs' claims; and (3) Pittsfield Hotel's course of dealing with Travelers has created an implied-in-fact contract. But none of these arguments establishes that Pittsfield Hotel has standing to bring a breach-of-contract claim relating to the Policy.

### A. Ratification

First, Plaintiffs argue, Travelers "ratified" Pittsfield Hotel as an insured party when it accepted premium payments made under the Policy. Plaintiffs do not argue that *Pittsfield Hotel* paid Travelers; rather, they contend, the payments were made "on behalf of [Pittsfield Hotel]." Pl.'s Resp. Opp. Mot. Dismiss at 8, ECF No. 40. But this fails to establish that Travelers knowingly accepted payments from Pittsfield Hotel, an entity not named in the Policy; indeed, Travelers asserts that it "accepted premiums . . . from the Applicants identified in the Application," which did not include Pittsfield Hotel. Def.'s Reply Supp. Mot. Dismiss at 3, ECF No. 45. Plaintiff has provided no competent evidence that Travelers knew these payments were coming from Pittsfield Hotel. Accordingly, Plaintiffs' ratification argument fails to establish standing.

### B. Waiver

Plaintiffs also attempt to establish standing by arguing that Travelers "waived objections to the Policy" by making partial payments on claims under the Policy. Pl.'s Resp. Opp. Mot.

Dismiss at 8. Because there is no express waiver of any right under the Policy, Plaintiffs have "the burden of proving a clear, unequivocal, and decisive act of [Travelers] manifesting an intention to waive its rights." *PQ Corp. v. Lexington Ins. Co.*, 860 F.3d 1026, 1032 (7th Cir. 2017) (quotation marks and citation omitted).

Plaintiffs point to their allegations that Travelers made payments "to Plaintiffs" under the Policy. Am. Compl. ¶¶ 43, 45–46. But where, as here, a defendant raises a factual challenge to a plaintiff's standing, the Court must look beyond the allegations of the complaint. *Evers*, 536 F.3d at 656–57. Here, Travelers has provided copies of the three checks issued; none is made out to Pittsfield Hotel. *See* Def.'s Reply Supp. Mot. Dismiss, Ex. 1, ECF No. 45-1. The act of making payments to parties covered under the Policy hardly amounts to "a clear, unequivocal and decisive act" by Travelers to waive its rights to object to the coverage of additional parties under the Policy. *PQ Corp.*, 860 F.3d at 1032. Similarly unpersuasive is Plaintiffs' argument that Travelers waived objections to insuring Pittsfield Hotel when it stated that replacement costs could not be claimed on floors 2–9 because they were vacant. According to Plaintiff, this reasoning is inconsistent with Travelers's argument that Pittsfield Hotel is not covered under the Policy. But giving arguably inconsistent reasons for denying coverage does not rise to an unequivocal act that amounts to waiver, and Plaintiffs fail to establish standing on this basis.

## C. Implied-In-Fact Contract.

Finally, Plaintiffs argue that there was a "course of dealing" between Pittsfield Hotel and Travelers, such that it "can be implied that [Pittsfield Hotel] was in fact an insured party under the subject policy." Pl.'s Resp. Opp. Mot. Dismiss at 10. While it is true that a course of dealing can establish an implied-in-fact contract, *see Greenview Ag Ctr., Inc. v. Yetter Mfg. Co.*, 615 N.E.2d 395, 398 (1993), Plaintiffs present no evidence of any such course of dealing.

8

Plaintiffs point to the longstanding relationship between Plaintiffs' investment group and Travelers as evidence of a course of dealing. *Id.* But this ignores the reality of corporate separateness. While the complaint may plausibly allege a course of dealing between Pittsfield Development and Travelers, Pittsfield *Development* is a separate entity from Pittsfield *Hotel*. And corporate separateness cannot be disregarded, especially in the context of insurance contracts. *See Gen. Ins. Co. of Am. v. Clark Mall, Corp.*, 631 F. Supp. 2d 968, 974 (N.D. Ill. 2009) (stating that defendants could not "disregard corporate separateness and convert an insurance policy" for one corporation "into one for" a related corporation not named therein). Accordingly, Plaintiffs cannot establish Pittsfield Hotel's standing through a course of dealing.

In sum, because Plaintiffs have failed to provide "competent proof" of Pittsfield Hotel's standing to enforce an insurance contract to which it is not a party, Travelers's motion to dismiss Pittsfield Hotel's breach-of-contract claim pursuant to Rule 12(b)(1) is granted.[4]

## II. Reformation Claim (Count II)

Travelers also seeks to dismiss Plaintiffs' reformation claim (Count II) under Rule 12(b)(6), arguing that it fails to meet the heightened pleading standard required by Rule 9(b). The parties seemingly agree that Rule 9(b) applies to Plaintiffs' reformation claim.

To succeed on a reformation claim under Illinois law (the applicability of which the parties do not dispute), a plaintiff must prove that "there has been a meeting of the minds resulting in an actual agreement between the parties, that the parties agreed to reduce their agreement to writing, and, at the time that the agreement was reduced to writing and executed, some agreed upon

---

[4] The Court notes that in certain cases, a non-party may sue for breach of contract as a third-party beneficiary if the contract was entered into for the direct benefit of the non-party. *See City of Yorkville ex rel. Aurora Blacktop Inc. v. Am. S. Ins. Co.*, 654 F.3d 713, 715 (7th Cir. 2011). Here, neither side has raised the issue of whether Pittsfield Hotel is a third-party beneficiary of the Policy, so the Court does not consider that possibility in assessing Pittsfield Hotel's standing.

9

provision was omitted or a provision not agreed upon inserted, either through mutual mistake or through mistake by one party and fraud by the other." *Ind. Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 173 F. Supp. 2d 835, 841–42 (N.D. Ill. 2001) (citing *All. Syndicate, Inc. v. Parsec, Inc.*, 741 N.E.2d 1039, 1048–49 (Ill. App. Ct. 2000)).

Travelers contends that Plaintiffs' reformation claim must be dismissed under Rule 9(b) because it fails to sufficiently allege that Travelers agreed to provide insurance to Pittsfield Hotel. But the allegations of Plaintiffs' amended complaint are enough to satisfy the "who, what, when, where, and how" inquiry. *See DiLeo*, 901 F.2d at 627. Plaintiffs assert that they notified Travelers via its alleged agent, Carbone, that floors 2–9 of the Building had been conveyed to Pittsfield Hotel. Am. Compl. ¶ 22. Carbone then prepared the Application, which included those specific floors in the description of the property to be insured. *Id.* ¶ 23. The Application excluded other floors, which it stated were "owned by outside interest." Application at 3. Yet, Plaintiffs allege, Carbone mistakenly omitted Pittsfield Hotel as an additional insured on the Application. Am. Compl. ¶¶ 61–63; Application. And although the parties dispute whether Carbone was acting as Plaintiffs' agent or Travelers's, Travelers ultimately issued an insurance policy that explicitly provided coverage for floors 2–9. Am. Compl. ¶¶ 61–63; Application; Policy. These allegations support a reasonable inference that the parties intended that the entity who owned floors 2–9 was to be insured under the Policy, but that Pittsfield Hotel was mistakenly omitted from the list of insured parties. Accordingly, Travelers's motion to dismiss is denied as to Count II.

## **Conclusion**

For the reasons stated herein, Travelers's motion to dismiss is granted in part and denied in part. The motion is granted insofar as Count I is dismissed for lack of standing on the part of Pittsfield Hotel. The motion is denied, however, as to Count II.

**IT IS SO ORDERED.**                    ENTERED: 7/22/19

_____

**John Z. Lee
United States District Judge**