1

```
1                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
2                             EASTERN DIVISION

3    PITTSFIELD DEVELOPMENT, LLC,      )
     an Illinois limited liability     )
4    company; PITTSFIELD               )
     RESIDENTIAL II, LLC, an           )
5    Illinois limited liability        )
     company; and PITTSFIELD HOTEL     )
6    HOLDINGS, LLC, an Illinois        )
     limited liability company,        )  Case No. 18 CV 06576
7                                       )
                       Plaintiffs,     )  Chicago, Illinois
8                                       )  November 10, 2020
     -vs-                              )  9:11 a.m.
9                                       )
     THE TRAVELERS INDEMNITY           )
10   COMPANY,                          )
                                        )
11                     Defendant.      )

12
                       TRANSCRIPT OF PROCEEDINGS
13            BEFORE THE HONORABLE STEVEN C. SEEGER

14   TELEPHONIC APPEARANCES:

15   For the Plaintiffs:      COLLINS & BARGIONE
                              BY:  MR. CHRISTOPHER R. BARGIONE
16                            One North LaSalle Street
                              Suite 300
17                            Chicago, IL 60602

18   For the Defendant:       FORAN GLENNON PALANDECH PONZI & RUDLOFF
                              BY:  MR. JOHN EGGUM
19                            222 North La Salle Street
                              Suite 1400
20                            Chicago, IL  60601

21

22   Court Reporter:          AMY M. SPEE, CSR, RPR, CRR
                              Federal Official Court Reporter
23                            United States District Court
                              219 South Dearborn Street, Room 2318A
24                            Chicago, Illinois  60604
                              Telephone:  (312) 818-6531
25                            amy_spee@ilnd.uscourts.gov
```

1   TELEPHONIC APPEARANCES (CONT'D):

2   Also present:

3                         Robert Daniel

4                         Daniel Morman

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings heard in open court:)

2               THE CLERK:  18 CV 6576, Pittsfield Development versus

3      The Travelers Indemnity Company.

4               THE COURT:  Good morning, everyone.  This is Judge

5      Seeger.

6               Let's get everyone's appearances on the record,

7      starting with the plaintiff.

8               MR. BARGIONE:  Christopher Bargione on behalf of the

9      three plaintiffs.

10              THE COURT:  Good morning.

11              MR. EGGUM:  And John Eggum for Travelers.

12              THE COURT:  Okay.  Anybody else on the line?

13              MR. DANIEL:  Robert Daniel representing Pittsfield.

14              THE COURT:  All right.  I didn't catch that.  Say it

15      one more time.

16              MR. DANIEL:  Robert Daniel.

17              THE COURT:  Robert Daniel.  Okay.  Good morning.  And

18      who do you represent?

19              MR. DANIEL:  (Indiscernible.)

20              MR. BARGIONE:  He's not a lawyer.

21          (Unreportable cross-talk.)

22              MR. BARGIONE:  He's my client.  He's the plaintiff.

23              THE COURT:  All right.  So we don't have mass chaos,

24      let's do this, everyone.  We're doing today's hearing

25      telephonically.  Before you speak each and every time, I'd

1    appreciate it if you'd identify yourself so we can get a clean

2    record.

3            All right.  Mr. Daniel, you're the party, the

4    plaintiff?

5            MR. DANIEL:  I'm a member of the plaintiff, yes,

6    Your Honor.

7            THE COURT:  You're not a named plaintiff, you're one

8    of the members of the LLCs, I take it?

9            MR. DANIEL:  That is correct.

10            THE COURT:  Okay.

11            MR. DANIEL:  Thank you, Your Honor.

12            THE COURT:  All right.  And, plaintiffs' counsel,

13    could you repeat your last name for me.

14            MR. BARGIONE:  Bargione, B-, as in boy,

15    a-r-g-i-o-n-e.

16            THE COURT:  All right.  Good morning.

17            Anybody else on the line?

18            MR. MORMAN:  Good morning, Your Honor.

19            This is Daniel Morman, M-o-r-m-a-n.  I'm Florida

20    counsel to the plaintiffs.  And I'm just monitoring this call.

21    I won't be participating.

22            THE COURT:  All right.  You're counsel of record,

23    though?

24            MR. MORMAN:  I am not counsel of record in this case,

25    Your Honor, no.

1      THE COURT:  I got it.  You're just listening in?

2      MR. MORMAN:  Correct.

3      THE COURT:  Okay.  Welcome.

4      Anybody else on the line?

5      All right.  We're here for a status.  I'm going to

6  give you a ruling this morning.

7      This is an insurance coverage dispute between

8  Travelers Indemnity Company and three Pittsfield entities:

9  Pittsfield Development, LLC, Pittsfield Residential II, LLC,

10  and Pittsfield Hotel Holdings, LLC.

11      Travelers filed a motion to dismiss for lack of

12  standing and to dismiss for failure to state a claim.  That's

13  Docket No. 86.  The motion is denied.

14      This case is about insurance coverage for water

15  damage to the aptly named Pittsfield Building in downtown

16  Chicago.

17      On December 17, 2016, two pipes burst on the tenth

18  floor of the building.  Water soaked the skyscraper.  Water

19  cascaded down a number of floors in the building causing

20  significant damage.  The damage led to a claim for insurance

21  coverage.

22      The policy in question was issued by Travelers.  The

23  first named insured was Pittsfield Building, LLC.  Three

24  Pittsfield entities had applied for insurance coverage from

25  Travelers in the first place:  Pittsfield Building, LLC,

1    Pittsfield Development, LLC, and Pittsfield Residential II.

2              As I said, Travelers received a claim for coverage

3    for the water damage.  Travelers denied the claim in part.

4    Travelers denied the claim for floors 2 through 9 because the

5    floors were owned by another Pittsfield entity, namely,

6    Pittsfield Hotel Holdings, LLC.  And Pittsfield Hotel

7    Holdings, LLC, was not a named insured and was not a

8    subsidiary of the first named insured, meaning Pittsfield

9    Building, LLC.  This suit followed.

10             The second amended complaint alleges that the policy

11   contained a scrivener's error.  Specifically, Count II

12   contains a reformation claim.

13             The argument goes something like this:  The first

14   named insured was Pittsfield Building, LLC, but Pittsfield

15   Building, LLC, does not exist.  It's a nonexistent entity and

16   it has never existed.

17             Travelers sold the policy, so the argument goes, to a

18   nonexistent entity and, thus, there is a scrivener's error in

19   the policy.  Travelers meanwhile presumably cashed the checks

20   for premiums anyway.

21             The second amended complaint alleges that Pittsfield

22   Holdings, LLC, was a third-party beneficiary under the policy.

23   The policy includes a provision that extends insurance

24   coverage to third-party beneficiaries.

25             The language provides:  "In addition to the named" --

1   excuse me.  "In addition to the first Named Insured shown in

2   the Declarations, the following are added as Named Insured, as

3   their interest may appear with respect to insurance provided

4   under this policy for the first Named Insured shown in the

5   Declarations.

6          "Any subsidiary company or affiliated company over

7   which the first Named Insured has active management or

8   maintains more than 50 percent ownership interest provided the

9   first Named Insured notifies the Company within 90 days from

10   the date any such subsidiary or affiliate is acquired or

11   formed by the first Named Insured."

12          I'm quoting the policy, Docket No. 79-1 at 3 of 90.

13          Under Illinois law, which everyone agrees applies,

14   whether a nonparty is a third-party beneficiary under the

15   contract depends on the intentions of the parties.  That's

16   *City of Yorkville ex rel. Aurora Blacktop Inc. v. American*

17   *Southern Insurance Company*, 654 F.3d 713-717, Seventh Circuit

18   2011.

19          Also *Yakubinis*, Y-a-k-u-b-i-n-i-s, *v. Yamaha Motor*

20   *Corp. USA*, 847 N.E.2d 552-563.

21          The Court must look into whether the parties intended

22   to benefit a third party.

23          Here, Travelers moved to dismiss for lack of standing

24   and for failure to a state claim.  The gist of the argument is

25   that Pittsfield Holding -- excuse me -- Pittsfield Hotel

1    Holdings, LLC, is not one of the insureds and is not a

2    third-party beneficiary.  But at this stage the question is

3    whether Pittsfield Hotel Holdings, LLC, has standing to make

4    the argument for coverage, and the Court finds that it does.

5          A plaintiff has standing when the plaintiff has

6    suffered an injury in fact, the injury is fairly traceable to

7    the challenged action of the defendant, and it is likely as

8    opposed to merely speculative that the injury will be

9    redressed by favorable decision.  That's *Friends of the Earth*,

10   528 U.S. 180.

11         The theory of the case by Pittsfield Holdings, LLC,

12   is simple.  Pittsfield Hotel Holdings, LLC, argues that the

13   policy contained a mistake because the policy identified a

14   nonexistent entity as the insured.  Pittsfield Building, LLC,

15   was the first named insured, but Pittsfield Building, LLC, did

16   not exist.

17         According to Pittsfield Hotel Holdings, LLC, it would

18   have been covered as a third-party beneficiary if there had

19   been no mistake.  That theory of the case may or may not

20   prevail.  But at this point, the question is simply whether

21   Pittsfield Hotel Holdings, LLC, has standing to make the

22   argument, and the Court has little trouble concluding that it

23   does.  If Pittsfield Hotel Holdings, LLC, is right, then it

24   was arguably covered by the policy as a third-party

25   beneficiary.

1          Travelers advances a few arguments; none are

2   persuasive.  There is no reason to foreclose Pittsfield Hotel

3   Holdings, LLC, from making the argument down the road that the

4   parties intended it to be a third-party beneficiary.

5          Travelers argues that the policy only insures

6   subsidiaries of the first named insured.  The argument goes

7   something like this:  The first named insured is Pittsfield

8   Building, LLC.  The policy covers subsidiaries of the first

9   named insured, and Pittsfield Hotel Holdings, LLC, is not a

10  subsidiary of Pittsfield Building, LLC; ergo, there's no

11  coverage.

12         According to Travelers, there is no coverage because

13  Pittsfield Hotel Holdings, LLC, is not a subsidiary of the

14  first named insured.  That argument is too cute by half.  The

15  first named insured is a nonexistent entity.  No company is a

16  subsidiary of Pittsfield Building, LLC, because Pittsfield

17  Building, LLC, does not exist.

18         If Travelers' argument were correct, that provision

19  would provide phantom coverage.  It would extend coverage to

20  nonexistent subsidiaries of a nonexistent first named insured

21  and, thus, would be meaningless.

22         Surely the parties intended the provision to mean

23  something.  Surely Travelers thought that it was extending

24  coverage when it cashed the checks.

25         Under Travelers' reading, the mistake would be a

1    windfall that would prevent coverage for the waterfall.  That

2    simply cannot be right.  Under the insurance company's

3    reading, the policy provides ghost coverage for a ghost entity

4    with ghost subsidiaries.

5          Pittsfield Hotel Holdings, LLC, has standing to argue

6    that the parties did not intend phantom coverage for a

7    nonexistent entity with illusory subsidiaries.

8          Travelers also argues that Illinois law requires

9    third-party beneficiaries to be expressly named in the

10   contract, but there is a difference between identifying

11   third-party beneficiaries as a class or as a group on the one

12   hand and identifying third-party beneficiaries by name on the

13   other.

14         Illinois law does not require contracts to identify

15   third-party beneficiaries by name.

16         Let me give you a couple quotes.  "The contract may

17   define a third-party beneficiary by description of a class,

18   and it is sufficient if the plaintiff may be identified at the

19   time performance is due as a member of the class intended to

20   be benefited."

21         That was the Illinois Supreme Court in *Altevogt*,

22   A-l-t-e-v-o-g-t, *v. Brinkoetter*, B-r-i-n-k-o-e-t-t-e-r, 421

23   N.E.2d 182, 187, from 1981.

24         A federal court about a decade ago made the same

25   thing here in the Northern District of Illinois in *Valley Air*

1    *Service v. Southaire Inc.*, 2009 WL 1033556.  It's at Page 14.

2            The quote was:  "In addition, a party is not

3    automatically precluded from filing suit as a third-party

4    beneficiary if its name is not in the underlying contract."

5            The Illinois Supreme Court said something quite

6    similar in *Weil Freiburg*, F-r-e-i-b-u-r-g, *and Thomas P.C. v.*

7    *Sara Lee Corp.*, 577 N.E.2d 1344.

8            The quote was:  "The contract need not specifically

9    name a third-party beneficiary if it adequately defines a

10   class of individual beneficiaries."

11           Travelers' argument is also inconsistent with the

12   language of the policy itself.  The policy expressly extends

13   coverage to third-party beneficiaries, but it does not

14   identify them by name.  Again, I'm looking at the policy at

15   Docket No. 79-1 at Page 3 of 90.  Instead, the policy

16   identifies them as a group.  It refers to any subsidiary

17   company or any affiliated company.

18           If Travelers' argument is correct, then that

19   provision provides illusory coverage and would not protect

20   third-party beneficiaries at all.  Time will tell if

21   Pittsfield Hotel Holdings, LLC, will be able to present

22   evidence that the parties intended that it be a third-party

23   beneficiary.  But based on the allegations of the complaint

24   alone, which the Court must accept as true for purposes of a

25   motion to dismiss, there is reason to think that Pittsfield

1    Holdings, LLC, may be able to muster evidence in its favor.

2         The question is simply a question of standing based

3    on the allegations of the complaint, and the allegations of

4    the complaint are more than sufficient to allege enough for

5    standing.

6         I will say that there are a couple facts in the

7    papers that caught the Court's attention.  Specifically, the

8    application described the operation of the applicant and

9    expressly mentioned the offices on floors 2 through 8 as well

10   as the apartments on floors 9 through 12.  That's the

11   application which is in the docket at Docket No. 79-2 at

12   Page 3 of 13.

13        The application certainly suggests that the parties

14   contemplated coverage for those floors.  Why else mention the

15   floors in the insurance policy application?  Those floors were

16   operated by Hotel -- excuse me -- Pittsfield Hotel Holdings,

17   LLC.

18        Pittsfield Hotel Holdings, LLC, also points to the

19   fact that one or more of the Pittsfield entities flagged a

20   mistake to the insurance brokers, Carbone & Molloy, but for

21   whatever reason a mistake was never corrected.

22        The fact that they called attention to a mistake

23   before the accident is at least some evidence that there was a

24   mistake and that the parties intended to cover Pittsfield

25   Hotel Holdings, LLC.

1          Again, all of this is a question for another day.

2    The question is not at this point whether Pittsfield has

3    offered sufficient evidence to get to a jury about whether the

4    parties intended that it be a third-party beneficiary.

5    Today's question is simply about standing.  Today's question

6    is simply whether Pittsfield Hotel Holdings, LLC, has standing

7    to make the argument, and the straightforward answer is yes.

8          So that's my ruling.

9          I have a question for the parties.  I have a question

10   for Pittsfield's counsel first.  There was one thing that I

11   thought was a little bit odd in your papers.  You said that

12   there was a mistake in the policy, you said that they were the

13   intended third-party beneficiary because they were a

14   subsidiary, but it was not clear to me who you thought the

15   first named insured should have been.  In other words, you

16   identified the mistake, but I didn't see where you identified

17   what the right answer should have been.  Was it Pittsfield

18   Development, LLC, or was it something else?

19          MR. BARGIONE:  Pittsfield Development, LLC.

20          THE COURT:  All right.  And, defense counsel, what's

21   your argument for who the entity should have been in the

22   policy?

23          You've issued a policy to a nonexistent entity.  I

24   find it hard to believe that you would say that that was

25   intentional.  Certainly you take insurance premiums for a

1    reason.

2         What is your position about who the first named

3    insured should have been?

4         MR. EGGUM:  So the application requested that

5    Pittsfield Building, LLC, be the first named insured, so

6    that's how the policy was issued in accordance with their

7    request.

8         Now, the two other entities that are plaintiffs that

9    everyone agrees is an insured, the development entity and the

10   residential entity, those are real entities and those are also

11   insured under the policy.  So --

12        THE COURT:  Does Travelers insure nonexist- -- excuse

13   me.  Does Travelers insure nonexistent entities?

14        MR. EGGUM:  Travelers issued the policy in accordance

15   with the request of the insured based on the insured's

16   representation that that's a real entity --

17        THE COURT:  Right.  But --

18        MR. EGGUM:  -- and that's real property --

19        THE COURT:  But I find it hard to believe that they

20   would sell an insurance policy to a nonexistent entity.

21        MR. EGGUM:  Well, I mean, Your Honor, the policy is

22   issued based on the request.  It gets transmitted through the

23   broker.  You know, it's selected by the insured.  They're

24   saying this is the entity that is applying for coverage, they

25   own this property.  So it's evaluated on that basis.

1       What ended up occurring here is that there was a

2   transfer of the floors in a period of -- shortly before the

3   policy, within -- you know, basically a year and a half before

4   the policy.  That transfer was never disclosed.  It was a

5   transfer that involved new equity holders coming in to do this

6   hotel project.  And none of that was ever disclosed to

7   Travelers, that there was basically a changeover in ownership

8   because this joint venture was ongoing.

9       So this hotel holdings entity -- again, we were here

10  on a motion to dismiss, so we're accepting all the allegations

11  of the complaint as true.  The facts of what occurred here

12  with the ownership transfers are not identified in the

13  complaint and, you know, wouldn't be appropriate on a motion

14  to dismiss to bring forward.  But essentially what's going on

15  here is that you have an entity that was never disclosed to

16  Travelers that is trying to seek coverage under an insurance

17  policy that the former owners of the floors 2 through 8 had

18  given up.  And now they're saying, well, actually that's still

19  covered by the insurance policy.

20          THE COURT:  Let's go back to my --

21          MR. EGGUM:  That's not what the policy says.

22          THE COURT:  Let's go back to my question.  What is

23  your position about who the first named insured should have

24  been?  Is it your position that it was correct, that it was --

25  it should have been to the nonexistent entity?  Or is it your

1    position that one of the other two applicants should have been

2    the first named insured, meaning Pittsfield Development, LLC,

3    and Pittsfield Residential II?

4          MR. EGGUM:  It should have been the entity that they

5    requested, which is, unbeknownst to us before this litigation,

6    a nonexistent entity.  We're relying upon the application to

7    offer the policy and the representation that that entity

8    exists and owns property as identified in the application.

9    That turns out to be false, but that --

10         THE COURT:  Well, false -- false is -- Counsel, false

11   is kind of a loaded term.  You mean incorrect.  I don't think

12   you think anybody was making a false statement.  It was

13   inaccurate.  Let's call it incorrect.

14         MR. EGGUM:  Well, it was --

15         THE COURT:  It's not in their interest -- excuse me.

16   It's not in their interest to put down a nonexistent entity.

17   It's not a false statement in a traditional use of that word.

18         I'll tell you what, we're going to bracket this and

19   we're going to save this for a later day down the road.

20         I want to hear how discovery is going.  Let's start

21   with the plaintiff.  Where are we?

22         MR. BARGIONE:  You had continued the fact discovery

23   with regard to the counterclaim which the defendant filed.

24   And there's currently pending a fully briefed motion to

25   dismiss that counterclaim.

1          THE COURT:  Yep.  Correct.

2          Is discovery stayed --

3          MR. BARGIONE:  And --

4          THE COURT:  Excuse me.  Is discovery stayed --

5          MR. BARGIONE:  No.

6          THE COURT:  -- in the --

7          MR. BARGIONE:  No --

8          THE COURT:  -- meantime?

9          MR. BARGIONE:  -- discovery was -- no, discovery was

10   not stayed.  We did the -- we had requested the depositions of

11   the two people -- individuals from Bluestone that gave

12   declarations that are attached to the counterclaim.  Those

13   have been completed.

14          And so as far as fact discovery is -- it's completed.

15   The plaintiffs don't have any more fact discovery to do.

16          THE COURT:  Okay.  Defense counsel, anything on your

17   end?

18          MR. EGGUM:  No, I would agree that, you know, once we

19   have a ruling on the motion to dismiss, then we'll be ready to

20   continue on and go from there.

21          THE COURT:  Got it.  Okay.  Well, is there anything

22   that counsel for either side wants to raise this morning?

23          Let's start with the plaintiff.

24          MR. BARGIONE:  There was supposed to be a settlement

25   conference, and we did -- both sides submitted their letters

1    to the judge, Judge Cummings, but Judge Cummings decided that

2    just based on the letters, we were so far apart that, you

3    know, he thought it prudent, and the parties agreed, to wait

4    until the decision on the motions.

5          THE COURT:  Okay.  Here's what I'd like you to do:

6    By two weeks from today, I'd like each side to submit

7    supplemental letters to Judge Cummings with your respective

8    settlement positions.  I'd like you folks to meet and confer

9    no later than one week from Wednesday.

10         Let me get you that date.  That's the 18th, I think?

11         THE CLERK:  Mm-hmm.

12         THE COURT:  By one week from tomorrow on your

13   respective positions, and put updated letters to

14   Judge Cummings by one week from Monday, which is . . .

15         A week from this Monday is?

16         THE CLERK:  The 16th, November 16th.

17         THE COURT:  November 16th.  All right.

18         Submit supplemental letters to Judge Cummings by the

19   16th.

20         MR. BARGIONE:  Submit supplemental letters by the

21   16th.

22         THE COURT:  In other words, you folks should talk

23   next week on settlement.  And by the 16th, you each need to

24   write a letter to Judge Cummings that says, "We've had a

25   hearing in front of Judge Seeger.  He's ruled on the motion to

1  dismiss.  It was denied.  We've discussed settlement.  Here's

2  our position."  And maybe it will change, maybe it won't.  I

3  don't know.  But I think it's worthwhile to talk.

4        MR. BARGIONE:  And we're supposed to meet by a week

5  from this Wednesday, just me and counsel?  Because I think

6  that would be --

7        THE COURT:  Is that not enough time for you folks?

8  Do you want more time than that?

9        MR. EGGUM:  Your Honor, if we could have a

10  requirement to meet by Thursday the 19th and letters by the

11  23rd, that would really be of assistance given some travel I

12  have to do for a pretrial.

13        THE COURT:  Let's do that.  Let's --

14        MR. EGGUM:  Okay.

15        THE COURT:  Let's do it by the 19th.  I'll tell you

16  what, given Thanksgiving, folks, let's have your letters in by

17  December 1st.  How's that?  I think that's a Tuesday, if

18  memory serves.

19        MR. EGGUM:  Okay.  That's fine.

20        THE COURT:  I want to protect that week for people

21  and don't want to -- that's why I accelerated it.  I was

22  trying to -- I try not to impose a lot of work on people the

23  week of Thanksgiving.  So let's do those dates.

24        Does that work for everybody?

25        MR. BARGIONE:  That's fine.  And then they'll answer

1    the complaint?

2         THE COURT:  Yes, consistent with the deadline of the

3    federal rules.

4         MR. BARGIONE:  Okay.

5         THE COURT:  Plaintiffs' counsel, anything else on

6    your end?

7         MR. BARGIONE:  No, that's it.  Thank you, Your Honor.

8         THE COURT:  Defense counsel, anything on your end?

9         MR. EGGUM:  Nope, nothing for us.  Thank you.

10        THE COURT:  All right.  We're adjourned.  Thank you.

11        MR. BARGIONE:  Thank you, Your Honor.

12      (Which were all the proceedings heard.)

13                        *   *   *   *   *   *

14                   C E R T I F I C A T E

15

16     I certify that the foregoing is a correct transcript, to

17   the extent possible, of the record of proceedings in the

18   above-entitled matter, given the limitations of conducting

19   proceedings via telephone.

20

21   */s/ Amy M. Spee*                    *12/11/2020*

22   AMY M. SPEE, CSR, RPR, CRR        Date
     Official Court Reporter

23

24

25