# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| PITTSFIELD DEVELOPMENT, LLC, PITTSFIELD RESIDENTIAL II, LLC, and PITTSFIELD HOTEL HOLDINGS, LLC, | |
| Plaintiffs, | Case No. 18-cv-6576 |
| v. | Hon. Steven C. Seeger |
| THE TRAVELERS INDEMNITY COMPANY, | |
| Defendant. | |
| THE TRAVELERS INDEMNITY COMPANY, | |
| Counter-Plaintiff, | |
| v. | |
| PITTSFIELD DEVELOPMENT, LLC, PITTSFIELD RESIDENTIAL II, LLC, and PITTSFIELD HOTEL HOLDINGS, LLC, | |
| Counter-Defendants. | |

## MEMORANDUM OPINION AND ORDER

Two pipes burst on the tenth floor of Chicago's historic Pittsfield Building on December 17, 2016. Water cascaded down the inside of the building, soaking the first ten floors and causing significant damage. The deluge led to this insurance coverage dispute between the Pittsfield entities (the owners of the wet floors of the building) and The Travelers Indemnity Company (their insurer).

The Pittsfield entities filed suit, alleging that Travelers had refused to pay the full extent of the covered loss. They seek more than $8 million. Travelers, in turn, filed two counterclaims for breach of contract and unjust enrichment.

The basis for the counterclaims was one of the line items in the $8 million damages estimate. The Pittsfield entities demanded more than $1 million for asbestos remediation. They purported to rely on a bid from a remediation firm, but according to Travelers, the bid did not exist. It was "phantom" and "phony." Demanding coverage based on a non-existent bid, Travelers argues, was an act of fraud that voids coverage.

The Pittsfield entities, in turn, moved to dismiss. For the reasons stated below, the motion is granted in part and denied in part.

**Background**

In December 2016, two pipes burst on the tenth floor of the Pittsfield Building in downtown Chicago, creating a huge mess. *See* Second Am. Cplt., at ¶ 33 (Dckt. No. 79). Water "poured from the two pipes onto floor ten of the building," and it didn't stop there. *Id.* at ¶ 34. Water "traveled down the building through floors nine through one, causing extensive damage to the portions of the building owned by the Plaintiffs." *Id.*; *see also* Counterclaims, at ¶ 15 (Dckt. No. 116).

Several Pittsfield entities submitted a claim for coverage under a property insurance policy issued by Travelers. The policy covered "direct physical loss or damage" to the Pittsfield Building. *See* Policy (Dckt. No. 116-1, at 3, 10, 97 of 101); *see also* Counterclaims, at ¶ 14 (Dckt. No. 116).

There is a wrinkle about who, exactly, is covered by the policy. Travelers issued the policy to "Pittsfield Building, LLC." *See* Policy (Dckt. No. 116-1, at 3 of 101). But according to

2

the Pittsfield entities, no such entity exists. *See* Second Am. Cplt., at ¶¶ 18–19 (Dckt. No. 79). It was a "scrivener's error" (again, according to Plaintiffs). *Id.* at ¶ 19.

That issue is germane to the claims brought by the Pittsfield entities against Travelers, and is less germane to the counterclaims brought by the Travelers against the Pittsfield entities. So, for now, suffice it to say that several Pittsfield entities demanded coverage.[1]

The Pittsfield entities submitted a claim to Travelers under the policy for the damage. *See* Counterclaim, at ¶ 16 (Dckt. No. 116). Travelers, in turn, investigated the claim and determined that "certain amounts" were payable. *Id.* at ¶ 17.

The Pittsfield entities then hired a licensed public adjuster, Joseph Sabbagh, to assist them with their claim. *Id.* at ¶¶ 18–19. Based on communications with the adjuster, Travelers learned about damage to areas that it "had not previously been told were damaged in connection with the Loss." *Id.* at ¶ 20. So Travelers conducted a second investigation and determined it owed "certain amounts" for damage to these additional areas. *Id.* at ¶ 21.

In the months that followed, Travelers made a series of payments for the damage to the building. The payments totaled $301,537.95. *Id.* at ¶ 22.

The parties then hit an impasse. The Pittsfield entities and Travelers had much different views about the scope of coverage for the flooded floors. *Id.* at ¶ 24. The Pittsfield entities

---

[1] Here is the backstory, for any interested reader. Three Pittsfield entities eventually filed suit. Pittsfield Hotel Holdings, LLC owned floors 2–9. It is not a named insured, but it claims that it is an intended third-party beneficiary under the policy. *Id.* at ¶ 50. Travelers moved to dismiss for lack of standing, but this Court ruled that Pittsfield Hotel Holdings, LLC had standing to argue that it is an intended third-party beneficiary. *See* 11/10/20 Order (Dckt. No. 138); *see also* 11/10/20 Tr. (Dckt. No. 140). Whether Pittsfield Hotel Holdings, LLC has coverage under the policy is a question for another day. Two other Pittsfield entities – Pittsfield Development, LLC and Pittsfield Residential II, LLC – filed suit as well. There is no dispute about their ability to invoke the policy. In its answer, Travelers "admits that plaintiffs Pittsfield Development LLC and Pittsfield Residential #2 LLC . . . are each a Named Insured under the Policy, because they are identified in the insurance application." *See* Answer, at ¶ 13 (Dckt. No. 116); *see also* Counterclaims, at ¶ 11 (Dckt. No. 116) ("Pittsfield Development and Pittsfield Residential were Named Insureds under the Policy.").

3

eventually filed suit for breach of contract, alleging a covered loss of $8,592,961.40. *See* Cplt., at ¶¶ 40–41 (Dckt. No. 1). After subtracting the amount paid by Travelers so far ($301,537.95), the Pittsfield entities demanded damages totaling $8,291,423.45. *Id.* at ¶ 41.

The Pittsfield entities later amended the Complaint, twice. *See* First Am. Cplt. (Dckt. No. 25); Second Am. Cplt. (Dckt. No. 79). The Second Amended Complaint included claims for breach of contract and reformation. *See* Second Am. Cplt. (Dckt. No. 79). But the amount of damages did not change. Once again, the Pittsfield entities demanded damages totaling $8,291,423.45. *Id.* at ¶ 55.

The Pittsfield entities supported their damages demand by attaching an estimate from their insurance adjuster (again, Sabbagh). *Id.* at ¶ 41; *see also* Estimate of Damages (Dckt. No. 79-3) (Exhibit 3 to the Second Amended Complaint). It's not entirely clear from the Second Amended Complaint whether the Pittsfield entities shared that estimate (as opposed to something else) with Travelers before filing suit. *See* Answer, at ¶ 41 (Dckt. No. 116) (admitting that the insurance adjuster gave Travelers "his estimate dated July 4, 2017," but denying that Exhibit 3 was "the document sent to Travelers"). The estimate covers everything that you might think that you would need to do to repair a water-soaked building: removing carpet, replacing flooring, hanging drywall, painting walls, and so on.

The damage to the building was extensive, and so was the estimate. It spanned 100 pages, and covered more than 900 separate line items. *See* Estimate of Damages (Dckt. No. 79-3). In the end, after adding everything together, the estimate showed a loss totaling $8,592,961.40, the same number alleged by the Pittsfield entities in their Complaint. *Id.* (Dckt. No. 79-3, at 85 of 101).

Travelers brought counterclaims based on 1 of the 900+ line items. Line 929 appeared under the heading "HAZARDOUS REMOVAL." *Id.* (Dckt. No. 79-3, at 82 of 101). It contained an entry for "Lead Paint & Asbestos Removal (Bid Item from Bluestone Environmental)." *Id.* The line item included a bid amount of $950,000, with $190,000 in "Overhead and Profit," for a total of $1,140,000. *Id.*; *see also* Counterclaims, at ¶ 32 (Dckt. No. 116). That single line item represented a significant portion of the total amount of the claim for damages ($1,140,000 of $8,592,961.40, roughly 13% of the total). *See* Counterclaims, at ¶¶ 32–33.

Travelers asked about the damages estimate during discovery. In particular, Travelers probed into the basis for the $1.14 million demand for the asbestos removal. According to the counterclaims, Travelers discovered that Bluestone Environmental never made a bid for asbestos removal at all. *Id.* at ¶ 41 ("***there was no estimate/bid/proposal from Bluestone Environmental***") (emphasis in original).

Travelers ultimately filed two counterclaims about the "false," "phantom," "phony," and "fictitious" bid for asbestos removal. *Id.* at ¶¶ 1, 42, 44, 50. The first counterclaim is for breach of contract. Travelers claims that the Pittsfield entities breached a provision of the policy that prohibits insureds from committing fraud or intentionally misrepresenting facts. *Id.* at ¶¶ 51–62. Travelers seeks to void the policy based on the alleged misrepresentation about the asbestos removal.

The second counterclaim is for unjust enrichment. Travelers seeks to recover the $301,537.95 paid to the Pittsfield entities so far. *Id.* at ¶¶ 63–69.

The counterclaims take an unusual step, attaching evidence gathered during discovery about the "false" bid for asbestos removal. Travelers attached to its pleading a transcript of the

5

Rule 30(b)(6) deposition of the Pittsfield entities. When asked about the line item showing a loss of $1,140,000, the Pittsfield witness testified that they "have a proposal from a contractor that says it." *See* Dep., at 201:24-25 (Dckt. No. 116-4, at 15 of 18).

Travelers also attached two declarations from Bluestone Environmental. The President of Bluestone Environmental declared that the company "never provided a written estimate, bid, or quote to do work at the Pittsfield Building." *See* O'Dea Decl., at ¶ 7 (Dckt. No. 116-5, at 3 of 6). The company "has no record of providing a verbal estimate, bid, or quote," either. *Id.* at ¶ 9. In fact, Bluestone has never visited or inspected the Pittsfield Building. *Id.* at ¶ 8. In the second declaration, an employee of Bluestone confirmed that she "did not provide a written or verbal estimate, bid, or quote, or any ballpark/rough estimate" about this building. *See* Williams Decl., at ¶ 8 (Dckt. No. 116-5, at 6 of 6).

The Pittsfield entities responded by moving to dismiss the counterclaims. *See* Mtn. to Dismiss (Dckt. No. 122).

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). At this early stage, the Court assumes the truth of the well-pleaded facts in the counterclaim, including the exhibits. *See Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). A court normally cannot consider evidence outside the pleadings on a motion to dismiss without converting it to a motion for summary judgment. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). But an exhibit to the complaint is deemed to be part of the complaint itself, so it is fair game on a motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

6

**Discussion**

**I.     Breach of Contract**

The first counterclaim is for breach of contract. Travelers alleges that the Pittsfield entities breached the insurance contract by submitting a false claim for coverage.

The counterclaim rests on a policy provision that prohibits "CONCEALMENT, MISREPRESENTATION OR FRAUD." *See* Policy (Dckt. No. 116-1, at 59 of 101). The policy provides that it is "void" if the insured commits fraud "at any time." *Id.* The prohibition expressly applies to intentional misrepresentations of fact in connection with a claim:

> This policy is void in any case of fraud by the Insured as it relates to this policy at any time. It is also void if the Insured or any other person or entity insured under this policy, at any time, intentionally conceals or misrepresents a material fact concerning:
>
> 1. This policy;
>
> 2. The Covered Property;
>
> 3. The Insured's interest in the Covered Property; or
>
> 4. A claim under this Policy.

*Id.*

The Pittsfield entities move to dismiss on a variety of grounds. First, the Pittsfield entities argue that the counterclaim fails to allege the elements of breach of contract. *See* Mem. in Supp. of Mtn. to Dismiss, at 5–7 (Dckt. No. 122-1). But the Federal Rules of Civil Procedure require parties to plead claims, not elements. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) ("Ever since their adoption in 1938, the Federal Rules of Civil Procedure have required plaintiffs to plead *claims* rather than facts corresponding to the elements of a legal theory.") (emphasis in original). "Because complaints need not identify the applicable law, it is

manifestly inappropriate for a district court to demand that complaints contain all legal elements (or factors) plus facts corresponding to each." *Id.* (citations omitted).

Here, the counterclaim alleges more than enough facts to state a claim for breach of contract. Travelers alleges that it entered into an insurance contract with the Pittsfield entities (but not Pittsfield Hotel Holdings, LLC), and agreed to provide coverage. Travelers also alleges that the Pittsfield entities breached a provision of the policy that prohibits fraud. The Pittsfield entities allegedly breached that provision by submitting a $1 million demand based on a non-existent bid. That's enough to state a claim.

The Pittsfield entities argue that Travelers did not perform and live up to its end of the bargain, because it "refus[ed] to make any meaningful payments" for the insurance claim. *See* Mem. in Supp. of Mtn. to Dismiss, at 6 (Dckt. No. 122-1). But that's the *Pittsfield* theory of the case. A defendant's counterclaim is not deficient because it advances a theory of the case that is different than the plaintiff's theory of the case. That's the whole point of a counterclaim.

Second, the Pittsfield entities argue that Travelers has failed to allege the elements of a claim for intentional misrepresentation. *Id.* at 8–9 (Dckt. No. 122-1). But again, pleading the elements is not what matters. A pleading must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The counterclaim easily satisfies that standard.

And in any event, Travelers isn't bringing a claim for intentional misrepresentation. There are only two counterclaims: breach of contract, and unjust enrichment. There is no tort claim. The Pittsfield entities make an argument against a counterclaim that isn't in the case.

Next, the Pittsfield entities argue that the counterclaim fails to state a claim for fraud. They argue that the counterclaim does not satisfy the particularity requirements of Rule 9(b).

8

But again, the Pittsfield entities do not adequately capture what Travelers is actually alleging. Travelers isn't bringing a "fraud claim" *per se*. *See* Mem. in Supp. of Mtn. to Dismiss, at 9–11 (Dckt. No. 122-1). It brings a breach-of-contract claim that rests on an alleged breach of a provision that prohibits misrepresentations. So, Travelers is bringing a breach-of-contract claim, not a fraud claim.

That said, fraud is the basis of the breach-of-contract claim. And Rule 9(b) sweeps broadly to cover any allegation of fraud in a pleading. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b). The rule applies to any "alleg[ation]" of fraud, and is not limited to a *claim* of fraud. *Id.*; *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("[T]he practices alleged in Pirelli's complaint constitute fraudulent activity, and the dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud."); *see also Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations.") (citations omitted).

Travelers alleges fraud, so Rule 9(b) applies. "Rule 9(b) requires that facts such as 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff' be alleged in detail." *Heffernan v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) (quoting *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)). "In adding flesh to the bones of the word particularity, we have often incanted that a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud – 'the first paragraph of any

9

newspaper story.'" *Pirelli*, 631 F.3d at 441–42 (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)).

The counterclaim easily passes muster under Rule 9(b). Travelers alleges, with exacting detail, the specifics of the alleged fraud. Travelers alleges that the Pittsfield entities submitted a false claim by demanding over $1 million based on a non-existent bid. In fact, the damages estimate is attached to the Pittsfield entities' very own Second Amended Complaint (*see* Dckt. No. 79-3), so it is difficult to see what other details the Pittsfield entities think they need.

Next, the Pittsfield entities argue that the voluntary payment doctrine prohibits Travelers from recovering the amounts paid so far. *See* Mem. in Supp. of Mtn. to Dismiss, at 7–8 (Dckt. No. 122-1). But the voluntary payment doctrine is an affirmative defense, and a complaint or a counterclaim does not have to "plead around" an affirmative defense to survive a motion to dismiss. *See State Mech. Servs., LLC v. NES Equip. Servs. Corp.*, 2018 WL 2193248, at *3 (N.D. Ill. 2018); *Gentles v. Healthport Tech. LLC*, 2016 WL 1042990, at *3 (S.D. Ill. 2016); *Louisiana Firefighters' Ret. Sys. v. Northern Tr. Invs., N.A.*, 2015 WL 1281493, at *5 n.3 (N.D. Ill. 2015); *see generally Davis v. Indiana State Police*, 541 F.3d 760, 763 (7th Cir. 2008); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain *any* information about defenses and may not be dismissed for that omission.") (emphasis in original).

Even so, the voluntary payment doctrine does not apply to the facts alleged by Travelers. The voluntary payment doctrine "is a corollary to the mistake of law doctrine and, in its general formulation, holds that a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." *See Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663,

667 (7th Cir. 2001); *see also* Restatement (3rd) of Restitution and Unjust Enrichment § 6, cmt. e (2021) ("A more appropriate statement of the voluntary payment rule, therefore, is that money voluntarily paid *in the face of a recognized uncertainty as to the existence or extent of the payor's obligation to the recipient* may not be recovered, on the ground of 'mistake,' merely because the payment is subsequently revealed to have exceeded the true amount of the underlying obligation.") (emphasis in original).

"The doctrine, stated succinctly, maintains that '[a]bsent fraud, coercion, or mistake of fact, monies paid under a claim of right to payment but under a mistake of law are not recoverable.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting *Randazzo*, 262 F.3d at 668); *see also Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 213 Ill. Dec. 304, 658 N.E.2d 1325, 1330 (1995). The voluntary payment doctrine "ensures that those who desire to assert a legal right do so at the first possible opportunity; this way, all interested parties are aware of that position and have the opportunity to tailor their own conduct accordingly." *Randazzo*, 262 F.3d at 668. The doctrine "applies to any cause of action which seeks to recover a payment on a claim of right, whether that claim is premised on a contractual relationship or a statutory obligation." *Spivey*, 622 F.3d at 822 (quoting *Harris v. ChartOne*, 362 Ill. App. 3d 878, 299 Ill. Dec. 296, 841 N.E.2d 1028, 1031 (2005)).

The Pittsfield entities argue that Travelers cannot recoup the money that it voluntarily paid so far, meaning the $301,537.95. That argument faces a number of problems.

The doctrine applies only when a payment is made with full knowledge of the facts. *See Lee v. Allstate Life Ins. Co.*, 361 Ill. App. 3d 970, 297 Ill. Dec. 528, 838 N.E.2d 15, 22 (2005). "The rule is that in the absence of fraud, misrepresentation, or mistake of fact money voluntarily paid under a claim of right to the payment, *with full knowledge of the facts by the person making*

11

*the payment*, cannot be recovered unless the payment was made under circumstances amounting to compulsion." *King v. First Capital Fin. Servs. Corp.*, 215 Ill. 2d 1, 293 Ill. Dec. 657, 828 N.E.2d 1155, 1171 (2005) (quoting *Illinois Graphics Co. v. Nickum*, 159 Ill.2d 469, 203 Ill. Dec. 463, 639 N.E.2d 1282, 1295 (1994)) (emphasis added); *see also Randazzo*, 262 F.3d at 667.

Here, Travelers made payments in August 2017 and March 2018. *See* Counterclaims, at ¶ 23 (Dckt. No. 116); Checks (Dckt. No. 116-2); Second Am. Cplt., at ¶¶ 43, 45–46 (Dckt. No. 79); Estimate of Damages (Dckt. No. 79-3, at 2 of 101).[2] The case was filed in September 2018. Travelers didn't know about the falsity of the bid until it took discovery, months later. *See* Counterclaims, at ¶ 1 ("Discovery has revealed that the estimate included more than $1.1 million in phantom asbestos remediation costs arising from a phony 'Bid Item' from Bluestone Environmental."). Discovery got underway – and, according to Travelers, the truth came out – long after Travelers made the payments.

Travelers paid $301,537.95 before it knew that the bid was false, so it had no opportunity to withhold payment based on the falsity of the bid. Travelers couldn't withhold payment based on a false bid before it knew that the bid was false.

The doctrine also does not apply when there is payment based on fraud. *See Spivey*, 622 F.3d at 822. Travelers alleges that the Pittsfield entities committed fraud by submitting a phony bid for asbestos removal. If Travelers is right that the Pittsfield entities submitted a fraudulent

---

[2] It is unclear when, exactly, Travelers received the damages estimate. The estimate is dated July 4, 2017. *See* Estimate of Damages (Dckt. No. 79-3, at 2 of 101). In the Second Amended Complaint, the Pittsfield entities allege that they sent it to Travelers in connection with their claim on July 12, 2017. *See* Second Am. Cplt., at ¶ 41 (Dckt. No. 79). In its answer, Travelers denied that the estimate (attached as Exhibit 3 to the Second Amended Complaint) was "the document sent to Travelers." *See* Answer, at ¶ 41 (Dckt. No. 116). In any event, for present purposes, the important thing is that Travelers paid first, and discovered the alleged fraud later. So it did not have full knowledge of the facts when it paid the $301,537.95.

claim, then there is no coverage under the policy (or so it argues), and Travelers should have paid nothing.

The Pittsfield entities make one final argument. They argue that section 154 of the Illinois Insurance Code prohibits an insurer from voiding a policy based on a misrepresentation. *See* Mem. in Supp. of Mtn. to Dismiss, at 11–12 (Dckt. No. 122-1). The provision governs misrepresentations when a potential insured applies for a policy:

> No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

*See* 215 ILCS 5/154. In Pittsfield's view, "[t]he language of the statute makes clear that a misrepresentation can only avoid an insurance policy if it affects the acceptance of the risk or the hazard undertaken by the insurer." *See* Mem. in Supp. of Mtn. to Dismiss, at 11.

But the text of the statute limits its reach. The statute applies to misrepresentations or false warranties "made by the insured . . . in the negotiation for a policy of insurance." *See* 215 ILCS 5/154. "Under section 154, any misrepresentations made by the insured *in the negotiation of a policy* do not defeat the policy unless the false representation appears in the policy or in an endorsement or rider attached to the policy." *See A & A, Inc. v. Great Cent. Ins. Co.*, 259 Ill. App. 3d 73, 196 Ill. Dec. 837, 630 N.E.2d 1002, 1009 (1994) (emphasis added); *see also Gov't Emps. Ins. Co. v. Dennis*, 65 Ill. App. 2d 365, 212 N.E.2d 759, 761 (1965) ("[O]ur conclusion is that the application of this section is limited as therein expressed, namely, 'in the negotiation for a policy.'") (citing 1963 version of section 154 which appeared at Ill. Rev. Stat. Ch. 73 § 766, which was identical to the current text of section 154 up to "application therefor").

13

Travelers is not alleging that the Pittsfield entities misrepresented the facts when they applied for coverage. Instead, Travelers is alleging that they committed fraud by submitting a false demand for $1 million based on a non-existent bid. The statute does not apply because Travelers is not seeking to void the policy based on a misrepresentation during the application process.

Case law confirms that the statute means what it says, and applies to misrepresentations made to insurers before buying a policy. In *A & A*, an insurance company claimed that the insured made misrepresentations during the application process, and in a proof of loss after the waffle house went up in flames. *See A & A*, 630 N.E.2d at 1009. So the misrepresentations were before and after purchasing the policy. The Illinois Supreme Court recognized the "timing requirements" of section 154, and applied the statute only to the misrepresentations made during the application process. *Id.* ("At the outset, we note that the misrepresentations asserted in statements (b) and (c) satisfy the timing requirements of section 154, since both concern Raguso's alleged misrepresentations made during the course of negotiations of the insurance policy."). There was no suggestion that the statute applied to post-purchase misrepresentations, too.

True, the text of the statute does not end with the reference to a "misrepresentation or false warranty" by the insured "in the negotiation" for an insurance policy. *See* 215 ILCS 5/154. The trailing text of that sentence also refers to a "breach of a condition of such policy." *Id.* For the sake of clarity, the full sentence reads (once again) as follows: "No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching

14

unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor." *Id.*

But the reference to a "breach of a condition" is not a saving grace for the Pittsfield entities here.[3] Travelers *does* allege that the Pittsfield entities breached a "condition" that was "stated in the policy." Specifically, it relies on an express provision that prohibits fraud in connection with the policy. *See* Policy (Dckt. No. 116-1, at 59 of 101).

The Pittsfield entities rely heavily on one particular case, but it does not help them. *See* Mem. in Supp. of Mtn. to Dismiss, at 11–12 (Dckt. No. 122-1) (citing *Methodist Med. Ctr. of Illinois v. Am. Med. Sec. Inc.*, 38 F.3d 316 (7th Cir. 1994)). The Pittsfield entities point to the section of that opinion that discussed materiality. *Id.* True enough. But that case involved a misrepresentation in an "application form." *See Methodist Med. Ctr.*, 38 F.3d at 320. So the statute applied there, but does not apply here.

Despite a flurry of arguments, the Pittsfield entities have not come forward with any reason to dismiss the counterclaim for breach of contract. Along the way, the Pittsfield entities make a bunch of arguments about the underlying facts. They criticize Travelers for failing to refer to the "phone records" in the pleadings. *See* Mem. in Supp. of Mtn. to Dismiss, at 11 (Dckt. No. 122-1). They fault the insurance company for failing to discuss the deposition of the insurance adjuster. *Id.* They criticize the declarations as "self serving." *Id.* at 7. And so on.

---

[3] The Pittsfield entities did not invoke this statutory phrase in their memorandum in support of the motion to dismiss, but did refer to the language in their reply brief. *Compare* Mem. in Supp. of Mtn. to Dismiss, at 11–12 (Dckt. No. 122-1) *with* Reply in Supp. of Mtn. to Dismiss, at 12–13 (Dckt. No. 134). Arguments raised for the first time in a reply brief are deemed waived. *See TAS Dist. Co. v. Cummins Engine Co.*, 491 F.3d 625, 630 (7th Cir. 2007) ("[I]t is well-settled that arguments first made in the reply brief are waived."); *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 586 (7th Cir. 1999) ("Even if the point had been preserved, [plaintiff] failed to develop it until her reply brief, which again is a day late and a dollar short.").

Maybe there is another side to the story. There often is. But a motion to dismiss is not the time or the place to dig deep into the facts uncovered in discovery and tell the movant's story. The question is whether the pleading advanced by the *non*-movant tells a story that holds together, not whether the movant has a story to tell, too. Here, the counterclaim tells a story, so it stays in the case.

## II. Unjust Enrichment Claim

Travelers' second counterclaim is for unjust enrichment. *See* Counterclaims, at ¶¶ 63–69 (Dckt. No. 116). The insurance company argues that it would be unjust for the Pittsfield entities to keep the $301,537.95 that Travelers has paid so far. The argument rests on the language of the policy: the Pittsfield entities "agreed with Travelers under the Policy" that the policy is void if they commit fraud. *Id.* at ¶ 67.

The counterclaim defeats itself. "Claims for breach of contract and unjust enrichment are mutually exclusive . . . ." *Blanchard & Assoc. v. Lupin Pharm., Inc.*, 900 F.3d 917, 922 (7th Cir. 2018). Unjust enrichment is based on an "implied contract," so it "does not apply when an actual contract governs the parties' relationship." *Id.* (citation omitted); *see also Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) ("A claim for unjust enrichment is 'based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application.'") (quoting *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 180 Ill. Dec. 271, 607 N.E.2d 165, 177 (1992)); *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("In Illinois recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant.").

Unjust enrichment is an equitable remedy and requires a showing that there is no adequate remedy at law. *See Cohen*, 735 F.3d at 615; *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 296 Ill. Dec. 930, 836 N.E.2d 681, 704 (2005). But "[i]f an express contract exists to govern the parties' conduct, then there is no room for an implied contract." *See Cohen*, 735 F.3d at 615.

True, the Federal Rules allow parties to plead in the alternative. *See* Fed. R. Civ. P. 8(d). So, a party could plead that there was an express contract and, in the next claim, turn around and allege that if there was no express contract, then there was an implied contract. *See Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) (explaining that "generally an alternative claim is drafted in the form of 'either-or' and a hypothetical claim is in the form of 'if-then'").

But that's not what Travelers did here. The unjust enrichment counterclaim itself alleges that there was an express contract. *See* Counterclaims, at ¶ 67 (Dckt. No. 116). In fact, the counterclaim invokes the language of the policy: the Pittsfield entities "agreed with Travelers under the Policy that the Policy would be treated as void in the event of a violation of the 'Concealment, Misrepresentation or Fraud' provisions of the Policy." *Id.*

Travelers cannot bring a claim about an *implied* contract based on the language of the *express* contract. *See Ford v. Pacific Webworks, Inc.*, 2011 WL 529265, at *4 n.7 (N.D. Ill. 2011) ("[B]reach of contract and unjust enrichment may be pleaded in the alternative as long as plaintiffs have not incorporated allegations of a contract into their unjust enrichment claim."); *Hernandez v. Illinois Inst. of Tech.*, 2021 WL 1600171, at *7 (N.D. Ill. 2021) (same); *The Sharrow Group v. Zausa Dev. Corp.*, 2004 WL 2806193, at *3 (N.D. Ill. 2004) ("[W]hile plaintiff may plead breach of contract in one count and unjust enrichment and promissory

estoppel in others, it may not include allegations of an express contract, which governs the relationship of the parties, in the counts for unjust enrichment and promissory estoppel.").

The unjust enrichment claim is dismissed.

## Conclusion

The Court denies the motion to dismiss the counterclaim for breach of contract (Count I), and grants the motion to dismiss the counterclaim for unjust enrichment (Count II).

Date: June 8, 2021

Steven C. Seeger
United States District Judge