## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PITTSFIELD DEVELOPMENT, LLC, an )
Illinois limited liability company, )    No. 1:18-cv-06576
PITTSFIELD RESIDENTIAL II, LLC, an )
Illinois limited liability company, and )    Honorable Steven C. Seeger
PITTSFIELD HOTEL HOLDINGS, LLC, )
an Illinois limited liability company, )    Honorable Jeffrey I. Cummings
                       )
          Plaintiffs, )
v. )
                       )
THE TRAVELERS INDEMNITY COMPANY, )
a Connecticut property and casualty insurance )
company, )
          Defendant. )

## TRAVELERS MEMORANDUM OF LAW IN SUPPORT OF ITS
## <u>MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

Introduction ................................................................................................... 1

Incorporation of Statement of Material Facts ..................................... 3

Applicable Law ............................................................................................. 3

    A.    Law Applicable to Travelers' Counterclaim for Breach of the Policy's Concealment, Misrepresentation or Fraud Provisions... 4

    B.    Law Applicable to the Pittsfield Entities' Breach of Contract Claim, including Proof of Damages. ...................................... 7

Argument ....................................................................................................... 8

I.    Travelers Is Entitled To Summary Judgment On Its Counterclaim Because The Pittsfield Entities Lied About Having A Written Bid Item From Bluestone.......................................................................... 8

II.    Travelers Is Entitled To Summary Judgment On The Breach Of Contract Claim Because The Pittsfield Entities Cannot Prove Their Damages............................................................................... 14

    A.    The Pittsfield Entities' Sole Expert Cannot Provide An Opinion Of Actual Cash Value That Complies With The Policy Because He Admits He Did Not Consider All Of The Relevant Factors....... 15

    B.    The Pittsfield Entities Sole' Expert Cannot Provide An Opinion Of Actual Cash Value Because "His" Opinions Are A Wholesale Adoption Of The Opinions Of The Public Adjuster – A Person Not Disclosed To Provide Testimony Under Rules 702, 703, Or 705..... 20

    C.    The Pittsfield Entities' Sole Expert Cannot Provide An Opinion Of Actual Cash Value Because He Did Not Form An Opinion Based on 2016 Pricing/Costs; He Utilized 2021 Pricing, Contrary to the Requirements of the Policy........................................ 25

III.    Travelers Is Entitled To Summary Judgment On The Reformation Claim Because It Is Moot Following Summary Judgment On The Claim For Breach Of Contract. .................................................... 27

Conclusion .................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*ABW Dev., LLC v. Cont'l Cas. Co.*, 2022 IL App (1st) 210930, ¶ 26 ............................ 4

*Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 453 (2009) ...................................... 4

*Barth v. State Farm Fire & Cas. Co.*, 228 Ill. 2d 163, 173 (2008)...................... passim

*Barth v. State Farm Fire & Cas. Co.*, 371 Ill. App. 3d 498, 500 (4th Dist. 2007), *aff'd*, 228 Ill. 2d 163 (2008)........................................................................ 12

*Bd. of Educ. of City of Chicago v. Gorenstein*, 179 Ill. App. 3d 388, 390 (1st Dist. 1989) ........................................................................................................ 18

*Beaton & Assoc., Ltd. v. Joslyn Mfg. & Supply Co.*, 159 Ill.App.3d 834, 845 (1st Dist. 1987) ............................................................................................ 7

*Cincinnati Ins. Co. v. Bluewood, Inc.*, 560 F.3d 798, 802 (8th Cir. 2009)................. 18

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613–14 (7th Cir. 2002) ........................................................................................................ 22

*Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir. 1999)...................... 4

*Folk v. Nat'l Ben Franklin Ins. Co.*, 45 Ill. App. 3d 595, 599 (4th Dist. 1976) ...... 5, 14

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017)................. 21

*Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 537 (10th Cir. 2017).............. 19

*Harbor House Condo. Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 319-320 (7th Cir. 1990) ................................................................................. passim

*Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005), *amended*, No. 01 C 9389, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005).................... 19

*London v. Ins. Placement Facility of Pennsylvania*, 703 A.2d 45, 49 (Pa. Super. Ct. 1997) ............................................................................................ 19

*Lykos v. Am. Home Ins. Co.*, 609 F.2d 314, 316 (7th Cir. 1979)................................. 13

*Matter of James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) .......................... 21

*Passero v. Allstate Insurance Company*, 196 Ill. App. 3d 602, 609 (1st Dist. 1990) ........................................................................................... passim

*Ramaco Res., LLC v. Fed. Ins. Co.*, No. 2:19-CV-00703, 2022 WL 822174, at *9 (S.D.W. Va. Mar. 4, 2022) ................................................................................. 17

*St. Joseph Light & Power Co. v. Zurich Ins. Co.*, 698 F.2d 1351, 1358 (8th Cir. 1983) .................................................................................................................. 17

*Tenore v. American and Foreign Ins Co. of N.Y.*, 256 F.2d 791, 795 (7th Cir. 1958) .. 6

*Terraces Condo. Ass'n v. Ins. Co. of Greater New York*, No. 19-CV-6028, 2022 WL 847478, at *5 (N.D. Ill. Mar. 22, 2022) .................................................... 7

*Tokio Marine & Fire Ins. Co. v. Norfolk & W. Ry. Co.*, 172 F.3d 44 (4th Cir. 1999) . 22

*Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 312 (2001) .............................. 17

*Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1374 (Fed. Cir. 2021) ............... 22

*Zahran v. Frankenmuth Mut. Ins. Co.*, 19 F.3d 1436, 1994 WL 107909, *4 (7th Cir. 1994) ........................................................................................................... 7, 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 124 (1969) ................. 7

**Rules**

FED. R. CIV. P. 26 ......................................................................................................... 21

FED. R. CIV. P. 56 ........................................................................................................... 3

FED. R. EVID. 701 ......................................................................................................... 18

FED. R. EVID. 702 .......................................................................................................... 18

FED. R. EVID. 802 .......................................................................................................... 10

**Treatises**

18 COUCH ON INSURANCE 2d § 74:191 (rev. ed. 1983) ................................................. 7

Defendant, The Travelers Indemnity Company ("Travelers"), by and through its attorneys, Foran Glennon Palandech Ponzi & Rudloff PC, states as follows for its Memorandum of Law in support of its Motion for Summary Judgment. Travelers seeks summary judgment against the Plaintiffs, Pittsfield Development, LLC ("Pittsfield Development"), Pittsfield Residential II, LLC ("Pittsfield Residential"), and Pittsfield Hotel Holdings, LLC ("Pittsfield Hotel", and, together with Pittsfield Development and Pittsfield Residential, the "Pittsfield Entities"), on Travelers' counterclaim, and on the Pittsfield Entities' claims for breach of contract and reformation.

## INTRODUCTION

Summary judgment is warranted and should be granted to Travelers in this property insurance coverage action for two independent reasons. *First*, the Pittsfield Entities breached the "Concealment, Misrepresentation or Fraud" provisions of the Travelers' insurance policy (the "Policy") by falsely testifying under oath that they had obtained a written $950,000 Bid Item from asbestos contractor Bluestone Environmental, representing alleged proof of asbestos abatement work that purportedly needed to be done as the result of a December 17, 2016 water loss (pipe burst). There is no written "Bid Item" – there is no "proposal from a contractor that says it" as the Pittsfield Entities testified at their Rule 30(b)(6) deposition when asked if they had proof to support their claim for this supposedly necessary abatement work. *See* Statement of Material Facts ("SMF"), at ¶¶ 30-45. There was no bid at all (written or oral) – Bluestone's owner testified that the largest project Bluestone has

1

ever done in the history of the business was in the $250,000 range, and the largest estimate ever given by Bluestone to anyone was around $500,000 (both of which would have necessitated an actual inspection prior to quoting). SMF ¶¶ 37-41. Bluestone did not give the Pittsfield Entities a $950,000 over-the-phone bid, sight unseen, to abate an unknown scope/quantity of asbestos in a multi-story section of a downtown Chicago high-rise building. SMF ¶ 33. The Pittsfield Entities' attempt to obtain a payment of $1,140,000 from Travelers (the $950,000 "bid" plus overhead and profit of $190,000), by means of a made-up asbestos Bid Item is a material breach of the Policy that renders the Policy void and entitles Travelers to repayment of the $301,537.95 Travelers paid in connection with this claim.

*Second*, and in the alternative, summary judgment is appropriate on the Pittsfield Entities' contract claim because discovery has shown that the Pittsfield Entities have no evidence to support the damages claimed under the Travelers' Policy. In this lawsuit, "replacement cost" is not at issue because no repairs were ever made; this case is about the "actual cash value" of damage allegedly caused by or resulting from the December 17, 2016 water loss. Summary judgment in favor of Travelers should be granted because the Pittsfield Entities cannot prove their alleged actual cash value damages. The Pittsfield Entities cannot substantiate the actual cash value of the property they claim was damaged because their sole Rule 26(a)(2) witness, Mr. Stephen Harmon, has not offered and cannot offer opinions that satisfy the contractual terms and conditions of the Policy. A plaintiff must prove actual cash value – contractually defined here as "the cost to repair, rebuild or replace the lost or

damaged property, at the time and place of the loss, with other property of comparable size, material and quality, less allowance for physical deterioration, depreciation, obsolescence and depletion" – with reasonable certainty, using competent, admissible evidence. *See* SMF ¶¶ 46-66; *see also Harbor House Condo. Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 319-320 (7th Cir. 1990). The Pittsfield Entities cannot carry their burden of proving "the extent and amount of their damages" based on the evidentiary deficiencies detailed herein. *See Id.*

Because the Pittsfield Entities cannot prove their damages, they cannot prove an essential element of their breach of contract claim, and summary judgment is therefore appropriate. Granting summary judgment on the contract claim or on the counterclaim makes the reformation claim moot, and therefore summary judgment is also warranted on that cause of action.

## **INCORPORATION OF STATEMENT OF MATERIAL FACTS**

Travelers has contemporaneously filed its Statement of Material Facts in accordance with Local Rule 56.1. The SMF and referenced exhibits are incorporated herein by reference.

## **APPLICABLE LAW**

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. FED. R. CIV. P. 56. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Feldman v. Am. Mem'l*

*Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir. 1999) (quoting Rule 56(c)). A genuine issue of fact exists only when a "reasonable jury could find for the party opposing the motion based on the record as a whole." *Id.* Courts have explained that neither "the mere existence of some alleged factual dispute between the parties", nor the existence of "some metaphysical doubt as to the material facts", will suffice to defeat a motion for summary judgment. *Id.*

This is an insurance coverage dispute governed by Illinois law. Insurance policies are contracts, subject to normal rules of contract interpretation. *ABW Dev., LLC v. Cont'l Cas. Co.*, 2022 IL App (1st) 210930, ¶ 26. As is customary and typical, the party seeking coverage under an insurance policy has the burden of demonstrating that a claim falls within the policy's terms. *Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). Insurers only bear the burden of proof on policy exclusions. *See Id.*

## A. Law Applicable to Travelers' Counterclaim for Breach of the Policy's Concealment, Misrepresentation or Fraud Provisions.

The Travelers' Policy provides:

### F. CONCEALMENT, MISREPRESENTATION OR FRAUD . . .

2. This policy is void if the Insured or any other person or entity insured under this policy, at any time subsequent to the issuance of this insurance, commits fraud or intentionally conceals or misrepresents a material fact relating to:

a. This policy;

b. The Covered Property;

c. The Insured's interest in the Covered Property; or

d. A claim under this policy

4

*See* SMF 44; Ex. 2, Policy, at PDF p. 80.

Illinois courts have found that similar contractual provisions prohibiting misrepresentations by policyholders are enforceable. *See Barth v. State Farm Fire & Cas. Co.*, 228 Ill. 2d 163, 173 (2008); *Passero v. Allstate Insurance Company*, 196 Ill. App. 3d 602, 609 (1st Dist. 1990); *Folk v. Nat'l Ben Franklin Ins. Co.*, 45 Ill. App. 3d 595, 599 (4th Dist. 1976). Unlike common law fraud, detrimental reliance is not a component of this contractual defense. A policyholder does not need to successfully "trick" the insurer into making a payment for this type of provision to apply – even where no payment is made, courts have granted summary judgment to insurers when a policyholder has made a misrepresentation in breach of the policy. *See, e.g.*, *Passero*, 196 Ill. App. 3d at 610 ("While false swearing is ordinarily a jury question, it becomes a question of law when the insured's misrepresentations cannot be seen as innocent."); *see also Barth*, 228 Ill. 2d at 172 ("[I]n both *Passero* and the instant case, the insurer discovered the misrepresentations before paying the filed claims in reliance on the misstatements.").

The *Barth* and *Passero* cases provide the roadmap for assessing the breach of an insurance policy based on policyholder misrepresentations. The elements are: (i) a concealment, misrepresentation or false statement; (ii) knowingly made by the policyholder; (iii) calculated to discourage, mislead or deflect the insurer's investigation in any area that could be relevant to the insurer at the time of the investigation. *Passero,* 196 Ill. App. 3d at 609; *see also Barth*, 228 Ill. 2d at 172–73. There is no requirement of "reasonable reliance" by the insurer. *Barth*, 228 Ill. 2d at

168 (explaining that a showing of fraud or misrepresentation does "not require proof of either reasonable reliance or injury"). A misrepresentation is considered material if it "might have affected the insurer's action or attitude, or if [it] may be said to have been calculated to discourage, mislead, or deflect the insurer's investigation in any area that might have seemed to it, at that time, a relevant area to investigate." *Passero*, 196 Ill. App. 3d at 609. The Illinois Supreme Court in *Barth* held that the following jury instruction is a correct statement of the law in Illinois:

> A concealment, misrepresentation, or false statement is material if a reasonable insurer would attach importance to it at the time it was made. A reasonable insurer would attach importance to any fact or statement that would affect the insurer's action or attitude regarding a claim by an insured.

> A concealment, misrepresentation, or false statement is material if it is calculated to discourage, mislead or deflect an insurer's investigation in any area that could be relevant to the insurer at the time of the investigation.

> Whether a concealment, misrepresentation, or false statement is material does not depend on whether it relates to a matter that ultimately proves to be significant in the insurer's final disposition of the claim.

*Barth*, 228 Ill. 2d at 173.

When a policy is void due to a material misrepresentation, the policyholder may not recover any amounts under the policy. *See Folk*, 45 Ill. App. 3d at 599 (because plaintiff "knowingly and willfully made false statements and through omission concealed material facts with intent to defraud. . . . [P]laintiff is not entitled to recover under his policies"); *see also Barth*, 228 Ill. 2d at 172; *Tenore v. American and Foreign Ins Co. of N.Y.*, 256 F.2d 791, 795 (7th Cir. 1958) (because plaintiffs "knowingly and wilfully [sic] made false statements with regard to a material matter

. . . plaintiffs are not entitled to recover any sum under their policies"). When amounts have already been paid under a void policy, the insurer is entitled to return of any funds previously paid. *See Zahran v. Frankenmuth Mut. Ins. Co.*, 19 F.3d 1436, 1994 WL 107909, *4 (7th Cir. 1994) ("'As a general rule, if the insurer pays a loss, being induced so to do by fraud, or by mistake as to facts which, if it had knowledge thereof, would have been a sufficient defense in an action by the insured upon the policy, the money so paid may be recovered.'") (quoting 18 COUCH ON INSURANCE 2d § 74:191 (rev. ed. 1983).

## B. Law Applicable to the Pittsfield Entities' Breach of Contract Claim, including Proof of Damages.

In this breach of contract action, the Pittsfield Entities have the burden of proving the damages they claim are recoverable under the terms and conditions of the Travelers Policy. *See Harbor House*, 915 F.2d at 318 (7th Cir. 1990); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 124 (1969) (damages cannot be based on speculation or guesswork); *Beaton & Assoc., Ltd. v. Joslyn Mfg. & Supply Co.*, 159 Ill.App.3d 834, 845 (1st Dist. 1987) (evidence must establish a reasonable basis for the jury to compute damages); *see also Terraces Condo. Ass'n v. Ins. Co. of Greater New York*, No. 19-CV-6028, 2022 WL 847478, at *5 (N.D. Ill. Mar. 22, 2022).

The Seventh Circuit's decision in *Harbor House* explains that in an insurance coverage action like this one, it is not enough to show that a loss *may* have occurred – the plaintiff "must prove the nature, extent or amount of their loss to a reasonable degree of certainty before any award of damages can be made under the policy."

*Harbor House*, 915 F.2d at 318 (citing numerous cases). The fact that a loss or damage event occurred is not sufficient to prove the *amount* of damage; the plaintiff must provide "evidence of the extent or amount of th[e] damage from which a jury could reasonably calculate damages." *Id.* at 319-320 (specifically noting that proof of "actual cash value" of the damage suffered must be proven with reasonable certainty).

In instances where a party fails to provide evidence of damages, summary judgment is appropriate. *Id.* at 320 ("There is no issue of fact for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

## ARGUMENT

I. **Travelers Is Entitled To Summary Judgment On Its Counterclaim Because The Pittsfield Entities Lied About Having A Written Bid Item From Bluestone.**

When the Pittsfield Entities filed this suit, they asserted an entitlement to damages in the amount of $8,291,423.45, and they reiterated that amount in the Second Amended Complaint, which is the operative pleading. SMF ¶¶ 18-20 (Dkt. No. 1, PageID.8; Dkt. No. 79, PageID.870). Part of this figure – as shown in the estimate that the Pittsfield Entities rely upon to support their claim, is an alleged "Bid Item" from Bluestone in the amount of $950,000. SMF ¶¶ 26-30 (Dkt. 79-3, PageID.985). The Pittsfield Entities first asserted they had this "Bid Item" from Bluestone pre-suit, back on July 11, 2017, when they sent their estimate to Travelers. SMF ¶ 26. This line item (totaling $1,140,000 with overhead and profit) has been included in all iterations of the Pittsfield Entities' estimates since that time. SMF ¶

26.  At their Rule 30(b)(6) deposition, the Pittsfield Entities, via their owner, Robert Danial, testified that the Pittsfield Entities were suing Travelers for the $1,140,000 based on the Bluestone line item, and when asked for proof that the $1,140,000 was a "real amount of loss", the Pittsfield Entities testified:

> "We have a proposal from a contractor that says it."

SMF 30.  Mr. Danial went on to state that the public adjuster, Mr. Sabbagh, was the person to ask about the particulars of the asbestos information.[1]  SMF 31 (Sabbagh Dep. 265:3-12 (Sabbagh says he merely had an oral estimate of $950,000; Bluestone disputes this; and Sabbagh notes that the oral estimate is: "possibly a dollar amount that would have to be addressed in this claim if there's asbestos in the property,").

The Pittsfield Entities do not, in fact, "have a proposal from a contractor that says it", with regard to the purported Bid Item from Bluestone.  SMF ¶¶ 33-45. Amazingly, the Pittsfield Entities doubled-down on the existence of this fictional Bid Item via their sole expert, Mr. Stephen Harmon.[2]  When asked if he had reviewed the Bid Item from Bluestone, he testified: "I looked it over."  SMF ¶¶ 62-66 (Ex. 21, Harmon Dep. 273:9-12).  Not surprisingly – since it doesn't exist – he could not remember the details of the Bid Item.  *Id.*

Many months after the Pittsfield Entities gave their false testimony, they tried to explain the testimony away by arguing that the Bid Item represents information

---

[1] Mr. Sabbagh is not a contractor.  SMF ¶ 9.

[2] Mr. Harmon testified that he is not holding himself out as an asbestos removal or abatement expert.  SMF 62-66 (Ex. 21, Harmon Dep. 275:6-9).  As Mr. Harmon is their only expert, the Pittsfield Entities do not have an expert on asbestos removal/abatement.

conveyed via a phone call. Dkt. 122-1, PageID.1960. According to the Pittsfield Entities, there was a phone conversation wherein a Bluestone employee, Tonia Williams, provided the $950,000 bid. SMF ¶ 31. Putting aside that Ms. Williams denies having provided such an estimate and testified that the largest over-the-phone estimate she has ever given to anyone is a mere $25,000 (SMF ¶¶ 31-41), pivoting to stating that there was a phone conversation with Bluestone does not save the Pittsfield Entities from the consequences of their false statement. It does not create an issue of fact to allege the "Bid Item" is actually a reference to information verbally conveyed from a phone call – even if the Pittsfield Entities were to testify as such,[3] that would not explain-away the false testimony that the Pittsfield Entities "have a proposal from a contractor that says it." They do not. SMF ¶ 33-42.

There is no issue for trial – the Travelers Policy states it is *void* if the insured commits fraud or intentionally conceals or misrepresents a material fact relating to a claim under the Policy. SMF ¶ 44 (Ex. 2, Policy, PDF p. 80). The evidence is that there was never any bid of any kind, and the Pittsfield Entities cannot dispute that there was no "proposal from a contractor that says it," even though they testified

---

[3] Putting aside, for a moment, the absurdity of suggesting that a contractor gave a nearly $1 million "bid" over the phone on a large project sight unseen, such testimony is entirely undermined by the undisputed facts of Bluestone's business. Bluestone has *never* produced a written estimate for $950,000 for *any* customer. SMF ¶ 41, 33. Bluestone's largest asbestos remediation job was around $250,000. SMF ¶ 37. Generally speaking, a large job for Bluestone would be a project in the range of $25,000 to $150,000. SMF ¶ 37. Bluestone has rarely done jobs over $100,000. SMF ¶ 37. It would also of course be inadmissible hearsay for a Pittsfield Entity witness to testify to the content of an out-of-court statement made by non-party Bluestone, and no possible exception would apply. FED. R. EVID. 802.

there was. While materiality might be a jury issue in some situations, the *Passero* case confirms that it is a question of law when the misrepresentations cannot be seen as innocent. *Passero*, 196 Ill. App. 3d at 610; *see also* SMF 45 (Ex. 1, Yesnes Declaration ¶ 14, addressing materiality). The Pittsfield Entities' Rule 30(b)(6) witness and owner, Mr. Danial, authorized the filing of the initial complaint, the amended complaint, and the second amended complaint, and he testified that he personally reviewed each of those complaints prior to filing. SMF ¶¶ 18-22. In fact, Mr. Danial verified the initial complaint under penalty of perjury. Dkt. 1, PageID.9; *see also* 28 U.S.C. § 1746 (permitting unsworn declarations). Mr. Danial was designated as the Pittsfield Entities' witness for all topics identified in the Rule 30(b)(6) notice, including the claim (item 6), estimates relating to the Property (item 7), documents received from anyone in connection with the loss (item 10), all damages claimed by the Pittsfield Entities (item 12), and:

> Asbestos at the Property, and asbestos abatement that: occurred at the property, was planned, **quoted**, **bid**, or contemplated with respect to the Property, or which is or may be necessary at the Property.

SMF 21 (Ex. 5A, Notice of Deposition, emphasis added). The testimony was a misrepresentation of the true facts of the support for the Pittsfield Entities' claim, and it was made under oath, by a person designated by the Pittsfield Entities to address the claim, the alleged damages, and asbestos quotes and bids.

Both the *Passero* and *Barth* cases confirm that summary judgment is proper. The *Passero* case, which was decided on summary judgment, involved a $9,040 claim for the actual cash value of certain stolen property. Included in that amount was a

$962.95 stereo system and $1,500 in video equipment. *Passero*, 196 Ill. App. 3d at 604. The Passeros' testified that a receipt that they turned in to Allstate was the true receipt for the stereo, but it was not – the Passeros only paid $454.71 for the stereo, not $962.95. *Id.* at 605. As to the video equipment, the amount was accurate, but the buyer was not – the buyer was a different person. *Id.*

The *Passero* court explained that policyholders are required to be truthful, and misrepresentations that discourage, mislead, or deflect investigation into aspects of the claim are material. *Id.* at 609 ("A reasonable insurer in Allstate's position would undeniably attach importance to such facts."). The court rejected the Passeros' arguments that the statements were immaterial – the misrepresentations were made and the consequence was that the policy was rendered void. *Id.* at 610 ("[I]t is settled that false swearing by the insured renders the policy void if, as here, the policy provides for that result from such conduct.").

*Barth* – a decision of the Illinois Supreme Court – cited *Passero* with approval, and also like *Passero* involved a policy provision very similar to the provision of the Travelers Policy. *See Barth*, 228 Ill. 2d at 172. The policyholder in *Barth* concealed information pertaining to his financial condition – he did not disclose he was behind on various bills (a motive for arson). *Barth v. State Farm Fire & Cas. Co.*, 371 Ill. App. 3d 498, 500 (4th Dist. 2007), *aff'd*, 228 Ill. 2d 163 (2008). The Illinois Supreme Court affirmed that Barth was not entitled to coverage, finding that misrepresentations are material if the statement would affect "the insurer's action or attitude regarding a claim," or if the statement "is calculated to discourage, mislead

or deflect an insurer's investigation in any area that could be relevant." *Barth*, 228 Ill. 2d at 173.

Here, there is no issue of fact for trial. The Pittsfield Entities told Travelers they were owed $1,140,000 on account of necessary asbestos abatement work, and their estimate[4] stated that the Bluestone $950,000 Bid Item was the support for that contention. Just like the policyholders in *Passero* and *Barth*, they told Travelers something that was false – here, that the "particular proof" that the asbestos abatement line item is a "real amount of loss" was that they "have a proposal from a contractor that says it." SMF 30. And just like the policyholders in *Passero* and *Barth*, the Pittsfield Entities have tried to either explain-away their testimony or assert it does not matter that the testimony was given. They are wrong, for the same reasons those courts found the Passeros' $500 stereo receipt misrepresentation was material and *Barth*'s "forgetfulness" about his overdue bills was material. Policyholders cannot lie about the support for a seven-figure claim or a $500 claim, as the plain language of the Travelers Policy and the foregoing authorities demonstrates.

---

[4] The Seventh Circuit has confirmed that labelling something an "estimate" does not create a license to include false representations. *See Lykos v. Am. Home Ins. Co.*, 609 F.2d 314, 316 (7th Cir. 1979). In that fire loss case, where the policyholder characterized its estimate as an "estimate for negotiation", the Court explained:

> [A] design on the part of the insured to gain a position of advantage in the settlement of the loss through false representations is a fraudulent design and the making of such representations knowingly for that purpose is an attempt to defraud . . . , even though the insured may not have expected or intended ultimately to obtain more than compensation for actual loss.

*Id.*

The consequence of the Policy being void due to breach of the misrepresentation provision is that the Pittsfield Entities are entitled to nothing from Travelers, and Travelers is entitled to repayment of the $301,537.95 it paid to the Pittsfield Entities. *Folk*, 45 Ill. App. 3d at 599 (because plaintiff "knowingly and willfully made false statements and through omission concealed material facts with intent to defraud . . . plaintiff is not entitled to recover under his policies"); *Zahran*, 1994 WL 107909, *4 ("'if the insurer pays a loss, being induced so to do by fraud, or by mistake as to facts which, if it had knowledge thereof, would have been a sufficient defense in an action by the insured upon the policy, the money so paid may be recovered'"); *see also Barth* and *Passero*, *supra*; SMF ¶¶ 6-15.  Travelers made payments following its investigation of the claim, and believed the parties merely had a (significant) factual disagreement about the claim for payment embodied in the Pittsfield Entities' $8.5 million estimate.  *Id.*  Having now learned that there is no Bid Item notwithstanding the Pittsfield Entities years-long written representation, and contrary to the Pittsfield Entities' sworn testimony in this case, Travelers is entitled to a judgment requiring the Pittsfield Entities to pay the $301,537.95 back to Travelers.  *See* SMF ¶¶ 6-15; Ex. 1, Yesnes Declaration ¶ 14.

Accordingly, summary judgment should be granted on the counterclaim, and the Court should enter judgment in favor of Travelers in the amount of $301,537.95.

## II.	Travelers Is Entitled To Summary Judgment On The Breach Of Contract Claim Because The Pittsfield Entities Cannot Prove Their Damages.

A separate issue warranting summary judgment in this case is that there is a

complete failure of proof as to the damages the Pittsfield Entities have asserted in this action. The Pittsfield Entities cannot substantiate the actual cash value of the property they claim was damaged because their sole Rule 26(a)(2) witness, Mr. Stephen Harmon, has not and cannot offer opinions that satisfy the contractual terms and conditions of the Policy.[5] There are three issues, each of which is a sufficient basis for the Court to enter summary judgment in favor of Travelers on the Pittsfield Entities' breach of contract claim.

### A. The Pittsfield Entities' Sole Expert Cannot Provide An Opinion Of Actual Cash Value That Complies With The Policy Because He Admits He Did Not Consider All Of The Relevant Factors.

The Travelers Policy defines actual cash value as "the cost to repair, rebuild or replace the lost or damaged property, at the time and place of the loss, with other property of comparable size, material and quality, less allowance for physical deterioration, depreciation, obsolescence and depletion." *See* SMF 54 (Ex 2, Policy, PDF p. 67). Mr. Harmon, who never even went to the Property, admits he did not consider one of the contractually-required factors – obsolescence – when evaluating Plaintiffs' alleged damages. SMF ¶¶ 54-61.

Mr. Harmon's Rule 26(a)(2)(B) report is comprised of a narrative portion and two estimates. SMF ¶¶ 46-47. The estimates are nearly identical – the only difference is that one has what Mr. Harmon calls "commercial pricing", and one has

---

[5] As the Court is aware, Travelers does not agree that Pittsfield Hotel Holdings is an insured under the Policy. Dkt. 141, PageID.2064. For simplicity, this brief will continue to refer to the Pittsfield Entities, since those entities all assert rights under the Policy.

what Mr. Harmon calls "residential pricing." SMF ¶¶ 51-53. In his estimates, Mr. Harmon provides a "RCV" or "replacement cost value" for each line item on the estimate, and Mr. Harmon provides an "ACV" or "actual cash value" for each line item on the estimate. SMF ¶¶. At his deposition, Mr. Harmon's testimony was clear – the column that identifies ACV represents an allowance for physical deterioration and depreciation. SMF ¶¶ 54-61. It does not include an allowance for obsolescence and depletion. *Id.*

The record is clear that there is no allowance for obsolescence because Mr. Harmon testified he did not know what obsolescence meant:

> Q. To determine the actual cash value, did you consider an allowance or a deduction for obsolescence or depletion that had occurred prior to the loss with regard to the carpet?
> A. No.
> Q. Okay. And so since you didn't consider it, you didn't actually provide an allowance for obsolescence or depletion, right?
> A. What is obsolescence?
> Q. Well, what does that mean to you?
> A. Why don't you explain it to me, because I have no idea what it is.
> Q. Okay. So because you're unaware of what obsolescence and depletion are -- well, I'll ask you this, are you aware of what depletion is?
> A. I'm sorry?
> Q. Are you aware of what depletion is?
> A. Yes.
> Q. Okay. So you could have considered depletion in connection with determining actual cash value, right?
> A. Could have.
> Q. But you did not?
> A. Because I went off the public adjuster's age and condition, what he gave me.
> Q. Right. Which is really just an assessment of physical deterioration and depreciation, right?
> A. Correct.

> Q. Okay. And then since you don't know what obsolescence is, you didn't consider that, and you didn't consider providing an allowance for that?
>
> A. Why don't we just look up the definition, or are you just going to tell me, or are you going to bang my nuts the whole time?

SMF ¶ 58 (Ex. 21, Harmon Dep. 164:23-166:12). This was not an isolated incident of Mr. Harmon's failure to consider obsolescence – on numerous occasions during his deposition, Mr. Harmon confirmed that he did not consider obsolescence in arriving at his opinion on actual cash value. SMF ¶¶ 60-61. He was not even aware that the Policy had a specific definition of actual cash value, or that the Policy's definition required consideration of obsolescence. SMF ¶ 61 (Harmon Dep. 242:21-243:3).

As discussed above, the law is clear that in an action seeking actual cash value of allegedly damaged property, the plaintiff must prove its damages with reasonable certainty. *Harbor House*, *supra*. And that necessarily means the Pittsfield Entities are obligated to prove their alleged damages are compensable based on the specific terms and conditions of the applicable insurance policy. *See Id.*; *see also Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 312 (2001) (in a different context, rejecting attempts to claim damages that were not supported by the plain language of the insurance policy); *St. Joseph Light & Power Co. v. Zurich Ins. Co.*, 698 F.2d 1351, 1358 (8th Cir. 1983) (Missouri law) (upholding J.N.O.V. for insurer on a property insurance claim where policyholder commingled damages that were covered with damages that were not covered by the insurance policy); *see, e.g.*, *Ramaco Res., LLC v. Fed. Ins. Co.*, No. 2:19-CV-00703, 2022 WL 822174, at *9 (S.D.W. Va. Mar. 4, 2022) (collecting cases and ruling that allegations of damages that do not comport with

insurance policy terms and conditions are not recoverable, notwithstanding jury verdict awarding those damages).

The sole witness disclosed by the Pittsfield Entities to provide testimony under Rules 702, 703, and 705 is Mr. Harmon. SMF ¶ 46; *see also Bd. of Educ. of City of Chicago v. Gorenstein*, 179 Ill. App. 3d 388, 390 (1st Dist. 1989) (demonstrating actual cash value requires an opinion of a person with sufficient expertise to render such an opinion). Accordingly, as to matters which require scientific, technical, or other specialized knowledge within the scope of Rule 702, there is a single person's reports and testimony to consider. *Compare* FED. R. EVID. 701 (clarifying that lay witnesses are limited to opinions "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"); and FED. R. EVID. 702 (addressing the requirements for a person to testify as an expert).

Just as the plaintiff in *Harbor House* was granted summary judgment due to lack of evidence of the amount of damages, here, no reasonable jury could calculate or determine the damages due to the Pittsfield Entities based on the Pittsfield Entities' evidence. Even if the Pittsfield Entities convince the jury that, factually, a particular item of property was damaged, the Pittsfield Entities' evidence provides the jury with no basis to determine "actual cash value" under the contractually-agreed formula contained in the Travelers Policy. Courts have found that when a policy specifically defines actual cash value, the identified factors must be considered. *Cincinnati Ins. Co. v. Bluewood, Inc.*, 560 F.3d 798, 802 (8th Cir. 2009) (instructing the jury by referencing that the policy definition that ACV "means the cost to replace

the damaged property less a deduction that reflects depreciation, age, condition and obsolescence, if any").[6]  Experts are not allowed to ignore the applicable factors that are relevant under the plain language of the contract.  *See Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005), *amended*, No. 01 C 9389, 2005 WL 8178971 (N.D. Ill. Sept. 8, 2005) ("Expert opinions that are contrary to law are inadmissible. . . . They cannot be said to be scientific, to be reliable, or to be helpful to the trier of fact. . . .  Indeed, 'it is not an 'expert' opinion, but rather a personal opinion about what [damages Mr. Dohmeyer] believes should apply' in this case.").

The jury would have to be instructed to consider obsolescence based on the Policy definition, and they would have no evidence from the Pittsfield Entities upon which they could evaluate the obsolescence factor and calculate damages using the formula mandated by the Policy.  "Obsolescence" is "the process of becoming obsolete or the condition of being nearly obsolete."  Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/obsolescence.  Here, consideration of obsolescence was highly pertinent.  The Pittsfield Entities had caused floors 2-9 of the building to be transferred to Pittsfield Hotel.  Brian Schleinblum was the person overseeing work to demolish the interior of those floors, which were subject to a demolition plan created on Sept. 3, 2014, long before the loss event.  SMF ¶ 59 (Ex. 10A, Scheinblum Dep. 56:2 - 56:20; 75:13-23.  Mr. Scheinblum testified as follows about the loss event:

---

[6] *See also, e.g., London v. Ins. Placement Facility of Pennsylvania*, 703 A.2d 45, 49 (Pa. Super. Ct. 1997) (policy requiring consideration of obsolescence); *Graves v. Am. Fam. Mut. Ins. Co.*, 686 F. App'x 536, 537 (10th Cir. 2017) (same).

> Q. Were you concerned about the damage to the floors that you
> owned?
> A. As I stated early on in this deposition, I could care less
> about what happened on the inside, because my intent was to
> completely tear everything out and renovate it for a hotel.

SMF 59 (Ex. 10B, Scheinblum (Chicago Case) Dep. 197:7-199:14.

Mr. Scheinblum – the individual that developed the demolition plan for floors 2 – 8 of the Property – was clear: he intended to demolish the entirety of the interiors as part of the Pittsfield Hotel project (as per the demolition plans). SMF ¶ 59. The Policy requires consideration of obsolescence, and therefore a person opining on "actual cash value" as that term is defined in the Policy is obligated to consider that substantially all interior spaces were going to be destroyed during a demolition process. SMF ¶ 59.

Having failed to consider obsolescence, Mr. Harmon cannot provide an opinion of actual cash value as that term is defined in the Policy. The Pittsfield Entities accordingly cannot establish the actual cash value of the property they say was damaged. For the same reasons the Seventh Circuit affirmed the entry of summary judgment in *Harbor House*, the Court should enter summary judgment on the breach of contract claim here.

**B. The Pittsfield Entities' Sole Expert Cannot Provide An Opinion Of Actual Cash Value Because "His" Opinions Are A Wholesale Adoption Of The Opinions Of The Public Adjuster – A Person Not Disclosed To Provide Testimony Under Rules 702, 703, Or 705.**

Mr. Harmon's opinions are inadmissible to prove the actual cash value of the Pittsfield Entities' allegedly damaged property because experts may not simply parrot the opinions of persons that are not disclosed under Rule 26.

Rule 26(a)(2)(A) provides that: "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26. Here, the Pittsfield Entities disclosed only one witness under Rule 26(a)(2)(B) (Mr. Harmon), and they specifically acknowledged that they have no Rule 26(a)(2)(C) witnesses. SMF ¶ 46.

Under Rules 702 and 703 of the Federal Rule of Evidence 703, experts can rely upon inadmissible facts and data to form their own opinions. FED. R. EVID. 702, 703; *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) ("[T]he critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data 'only by the *ipse dixit* of the expert' that is properly excluded under Rule 702.' . . . [T]here must be a 'rational connection between the data and the opinion.'"). Retained experts may not, however, serve as a mouthpiece for the opinions of persons not disclosed to provide opinion testimony. *Matter of James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) ("[T]he judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence. . . . The architect could use what the engineer told him to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him—of becoming in short the

engineer's spokesman. . . . [I]t is improper to use an expert witness as a screen against cross-examination.").[7]

Mr. Harmon's basis for nearly all his opinions are that a fact witness – Joseph Sabbagh – formed certain opinions. SMF ¶ 60. Mr. Sabbagh was not disclosed under Rule 26(a)(2)(B) or (C) as a person that would give opinion testimony in this case, and Mr. Harmon's wholesale adoption and recitation of Mr. Sabbagh's opinions is impermissible. *See* SMF ¶ 46. Examples of Mr. Harmon's wholesale adoption of Mr. Sabbagh's actual cash value opinions include:

> Q. How did you arrive at that figure for the proper deduction from the replacement cost?
> A. I asked the public adjuster what it was on depreciation. I went with his numbers.
> [Harmon Dep. 161:16-21]
>
>           \*\*\*
>
> [Q.] So is it true, then, that you considered physical deterioration that had occurred prior to the loss with regard to the carpet?
> A. Once again, I went off the public adjuster's opinion on the age and condition.
> [Harmon Dep. 163:19-24]
>
>           \*\*\*
>
> [Q.] [S]o that's Mr. Joseph Sabbagh's opinion about what the proper deduction for physical deterioration and depreciation is?

---

[7] *See also Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613–14 (7th Cir. 2002) (referencing "parroting the opinion of an expert" and explaining "The *Daubert* test must be applied with due regard for the specialization of modern science. . . . A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty."); *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1374 (Fed. Cir. 2021) (collecting cases, and noting expert testimony is not admissible where the expert just repeats the contents of source material); *Tokio Marine & Fire Ins. Co. v. Norfolk & W. Ry. Co.*, 172 F.3d 44 (4th Cir. 1999) ("[O]ne expert may not give the opinion of another expert who does not testify."); *Loeffel*, 387 F. Supp. 2d at 809 ("If allowed to testify, Mr. Dohmeyer would be 'hid[ing] behind' Messrs. Barron, King and DaClue and acting as their 'mouthpiece.' . . . He would, in effect, be vouching for their labor-added methodology, when he has absolutely no knowledge of whether the theory is valid and reliable.").

A. Whatever he had in the list, yes, I went with that.
[Harmon Dep. 170:1-6].

[Q] The factual basis for your opinion that that is the correct figure to use for depreciation is that Mr. Sabbagh opined that was the correct deduction for physical deterioration and depreciation?
A. Correct.
[Harmon Dep. 174:1-6].

***

[Q] Do you have any facts about the age and condition of the paint in the area marked offset one?
A. Like I said before, I went off the public adjuster's recommendation of age and condition is what I went off of.
Q. So his opinion about the physical deterioration and depreciation is what you considered in arriving at these figures?
A. Yes, for depreciation.
Q. You don't have any understanding of what factual factors he considered, do you?
A. I didn't hear you.
Q. You don't have any understanding of the factual factors that the public adjuster, Joseph Sabbagh, considered, do you?
A. No. No.
[Harmon Dep. 180:18-181:9]

***

Q. With regard to the deduction stated in the depreciation column, the total for the ninth floor is the $7,992.44, correct?
A. Correct.
Q. And that is, again, based solely on Mr. Sabbagh's opinions regarding the proper deduction for physical deterioration and depreciation, right?
A. Correct.
Q. And you don't have any information about what facts Mr. Sabbagh considered in arriving at his opinion, correct?
A. Negative.
Q. And you did not consider or provide an allowance or deduction for obsolescence or depletion, correct?
A. Negative.
Q. And your ACV figure takes the 2021 RCV price and subtracts the depreciation column, correct?
A. As per the program, yes.
[Harmon Dep. 218:1-21]

***

SMF ¶ 60.

There are numerous other instances of similar testimony given by Mr. Harmon – he relied completely on Mr. Sabbagh's opinions, and he does not know what facts Mr. Sabbagh considered in arriving at his opinions. *See* Harmon Dep. 260:3 - 261:15 ("You didn't make any adjustments to that [ACV] column anywhere in the estimate, did you? A. No.").

Mr. Harmon's testimony about actual cash value is clearly inadmissible because Mr. Harmon is just serving as a spokesperson or mouthpiece for Mr. Sabbagh's opinions.[8] Mr. Harmon has no other basis for his ACV opinions, and Mr. Sabbagh's opinions have no indicia of reliability – even Mr. Sabbagh is not comfortable relying on his own estimate. SMF ¶ 24 [Ex. 9, Sabbagh Dep. 182:17-25] ("Q. If you had been asked, do you recommend that we attach this estimate to a litigation complaint to prove our damages, what would you have said? . . . A. · I would say get a second opinion.").

A reasonable jury cannot be presented with Mr. Harmon's recitation of Mr. Sabbagh's opinions to arrive at a calculation of the amount of the Pittsfield Entities'

---

[8] It should be noted that Mr. Harmon also relied upon Mr. Sabbagh for an assessment of replacement cost (the cost to repair, rebuild or replace the lost or damaged property, at the time and place of the loss, with other property of comparable size, material and quality), which must first be determined so that actual cash value can be determined (since ACV is determined by taking the replacement cost and making an allowance for "physical deterioration, depreciation, obsolescence and depletion"). SMF ¶ 56 (Harmon Dep. 175:9-18) (Harmon testifying his opinion on RCV is reliable if four things are true: "Mr. Sabbagh's measurements were right, Mr. Sabbagh was correct in his opinion that the 2016 water loss caused damage to the areas identified in the estimate, Mr. Sabbagh was correct regarding the scope of work that needed to be done to repair or replace that damage, and the Xactimate pricing is right, meaning it's accurate."); *see also* SMF ¶ 60 [Harmon Dep. 225:1-19] (again confirming total reliance on Sabbagh's opinions on RCV).

damages. *See Harbor House*, *supra*. Summary judgment should accordingly be entered in favor of Travelers on the breach of contract claim.

## C. The Pittsfield Entities' Sole Expert Cannot Provide An Opinion Of Actual Cash Value Because He Did Not Form An Opinion Based on 2016 Pricing/Costs; He Utilized 2021 Pricing, Contrary to the Requirements of the Policy

Mr. Harmon admits that he has no opinion of the amount of loss or damage "at the time . . . of the loss", since he did not do an evaluation of the cost to repair or replace the allegedly damaged property as of December 17, 2016 when the loss occurred – he used 2021 prices. SMF ¶¶ 51-53.

The actual cash value definition requires assessment of the "cost to repair, rebuild or replace the lost or damaged property, *at the time and place of the loss*, with other property of comparable size, material and quality", prior to applying the various allowances addressed above. SMF ¶ 54 (emphasis added). The Pittsfield Entities' Rule 26(a)(2) disclosures indicate that one of Mr. Harmon's estimates states his opinion of the actual cash value of the loss as of December 16, 2016. SMF ¶¶ 46-47, 51-53. But that is a typo according to Mr. Harmon. SMF ¶ 51 (Harmon Dep. 290:17-23). Mr. Harmon used "price lists", representing the unit costs for various construction activities (labor and material costs), from 2021 for both of his estimates.[9] *Id.*; SMF ¶¶ 51-53 (Ex. 21, Harmon Dep. 120:6-11; 125:4 - 126:22). As detailed in the SMF, his methodology was to simply take the computer file from the Xactimate

---

[9] Mr. Harmon relied exclusively on the pricing provided by the Xactimate computer program. *See, e.g.* Ex. 21, Harmon Dep. 150:16-19 ("[Y]ou didn't do anything to independently verify the pricing provided by the software, did you? A. No.").

program that he got from Mr. Sabbagh and edit the pricing. SMF 50. Mr. Harmon acknowledged that using September 2021 pricing meant his estimate of damages was higher than if he had used December 2016 pricing, since COVID and other factors have caused prices to rise during that timeframe. SMF ¶ 49, 53 (Ex. 21, Harmon Dep. 143:21-145:1). He repeatedly confirmed that he did not use 2016 pricing. *See, e.g.*, SMF 51-53 (Harmon Dep. 174:7-175:5); *see also* Harmon Dep. 207:20-208:24).

Mr. Harmon could have formed an opinion about the cost to repair or replace damaged property at the Pittsfield Building using 2016 pricing – he has a computer program that he can use for that purpose – but he did not engage in that methodology or do that analysis, and he did not generate and disclose an opinion about the cost to repair or replace damaged property at the Pittsfield Building using 2016 pricing. SMF 51-53 (Harmon Dep. 261:16 – 263:10). And accordingly, his actual cash value opinion is noncompliant with the requirements of the Travelers Policy. Similar to his decision to forego consideration of obsolescence, Mr. Harmon's decision to ignore the definition of actual cash value in the Policy means he cannot provide the jury with the information necessary to calculate damages in accordance with the formula required by the Travelers Policy. That, in turn, necessitates summary judgment. *Harbor House*, 915 F.2d 319-20.

It is not possible for the Pittsfield Entities to prove the actual cash value of the property they claimed was damaged based on the three independently dispositive issues addressed above, and therefore summary judgment is appropriate on the Pittsfield Entities' breach of contract claim.

26

### III. Travelers Is Entitled To Summary Judgment On The Reformation Claim Because It Is Moot Following Summary Judgment On The Claim For Breach Of Contract.

The Pittsfield Entities' Second Amended Complaint includes a reformation cause of action as Count II. The sole purpose of that claim is to permit one of the Pittsfield Entities – Pittsfield Hotel – to be a party to the breach of contract claim addressed above. If the Court grants summary judgment on the breach of contract claim, the reformation claim will necessarily be moot. Since summary judgment is warranted on the breach of contract claim for the reasons discussed above, the Court should also enter summary judgment on the reformation claim.

### CONCLUSION

Summary judgment on both Travelers' counterclaim and the claims of the Pittsfield Entities' Second Amended Complaint should be entered in favor of Travelers. It is indisputable that the Pittsfield Entities breached the "Concealment, Misrepresentation or Fraud" provisions of the Policy by testifying they had a written "Bid Item" for asbestos abatement which does not, in fact, exist. Separately, an independent basis for granting summary judgment is that the Pittsfield Entities cannot prove their damages, as they cannot provide a reasonable jury with a basis to calculate the actual cash value using the formula mandated by the Travelers Policy.

WHEREFORE, Travelers respectfully requests that this Honorable Court:

A. Grant summary judgment in favor of Travelers and against the Pittsfield Entities on Travelers' counterclaim;

B.	Enter judgment in favor of Travelers and against the Pittsfield Entities in the amount of $301,537.95;

C.	Grant summary judgment in favor of Travelers and against the Pittsfield Entities on their claims for breach of contract and reformation;

D.	Award costs to Travelers; and

E.	Grant such other and further relief as is equitable and just.

Date: June 15, 2022	Respectfully submitted,

/s/ John Eggum
Matthew S. Ponzi
John Eggum
FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
222 North LaSalle Street, Suite 1400
Chicago, Illinois 60601
Tel:	(312) 863-5053
Fax:	(312) 863-5099
Email:	mponzi@fgppr.com
	jeggum@fgppr.com

*Attorneys for Defendant, THE TRAVELERS INDEMNITY COMPANY*