**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Pittsfield Development LLC, *et al.*,

        Plaintiff,

v.

The Travelers Indemnity Company,

        Defendant.

Case No. 18 C 6576

Honorable Jorge L. Alonso

## Memorandum Opinion and Order

As explained below, the Court grants Plaintiff Pittsfield Hotel Holdings, LLC's ("Pittsfield Hotel") motion to alter or amend judgment (Dkt. 195), denies Plaintiffs' motion to alter or amend judgment (Dkt. 200), and grants The Travelers Indemnity Company's ("Travelers") motion for leave to exceed page limits (Dkt. 207). The Court also sustains in part and overrules in part Plaintiffs' objections (Dkt. 203) to Travelers' bill of costs (Dkt. 197) and directs the Clerk of the Court to award Travelers $29,256.99 in fees and costs.

## Background

As explained in a prior Memorandum Opinion and Order entered in this case (Dkt. 190), this dispute arises from water damage in Chicago's Pittsfield Building after a pipe burst in December 2016. Plaintiffs Pittsfield Hotel, Pittsfield Development, LLC ("Pittsfield Development"), and Pittsfield Residential II, LLC ("Pittsfield Residential," and collectively the "Pittsfield Entities") owned floors that were damaged by the burst pipe.

At the time of the incident, Pittsfield Development and Pittsfield Residential—and an entity named "Pittsfield Building, LLC," but not Pittsfield Hotel—were named insureds to a commercial property insurance policy (the "Policy") issued by Travelers for the Pittsfield

Building. One of the Policy's provisions renders it void if an insured party intentionally misrepresents a material fact relating to a claim made under the Policy.

The Pittsfield Entities reported the pipe-burst incident to Travelers and hired Joseph Sabbagh, a licensed public adjuster, to help them submit their insurance claim. Sabbagh's resulting damages estimate of approximately $8.6 million included an estimated $1,140,000 in actual cash value for lead paint and asbestos removal, based on a "Bid Item" price of $950,000 plus $190,000 in overhead and profit. The Pittsfield entities later adopted Sabbagh's estimates as what they claimed to be owed under the Policy. Travelers disagreed with many of Sabbagh's damages estimates and instead made claim payments of $301,537.95.

Sabbagh based his estimate for lead paint and asbestos removal on a $950,000 oral estimate he had received by phone from an employee of Bluestone Environmental, Tonia Williams. Sabbagh had determined that asbestos might be in the Pittsfield Building based on its age and therefore called Bluestone Environmental for an estimated price for potential work. Sabbagh and the Pittsfield Entities took no further steps and did not get a written quote, bid, or estimate, but included the resulting $950,000 estimate as a line item in his damages estimate. Sabbagh testified at deposition that he did not view the line items in his report as a representation of what is recoverable from the insurance company, but instead as an estimate. Nevertheless, the Pittsfield Entities adopted Sabbagh's estimates as claimed damages to Travelers, and their damages expert, Stephen Harmon, later included the same $950,000 estimate Sabbagh had received from Bluestone Environmental and additional associated overhead and profit in his opinions.

The Pittsfield Entities sued Travelers for breach of contract in September 2018, claiming the remainder of their claimed $8.6 million in damages, including the $1,140,000 line item for

lead paint and asbestos removal. They later amended their complaint to add a claim for reformation of contract to add Pittsfield Hotel as an insured party under the Policy. Travelers brought its own counterclaim against Pittsfield Development and Pittsfield Residential—but not Pittsfield Hotel—for breach of contract, claiming those two parties had intentionally misrepresented they were owed $1,140,000 under the Policy for lead paint and asbestos removal based on the estimate Sabbagh had received from Bluestone Environmental.

After discovery, the parties cross-moved for summary judgment: Travelers requested summary judgment in its favor on its counterclaim and on the Pittsfield Entities' claims, and the Pittsfield Entities requested summary judgment in their favor on Travelers' counterclaim and on their reformation claim. The parties did not differentiate between the claims and arguments that applied only to Pittsfield Development and Pittsfield Residential and those that applied to Pittsfield Hotel as well.

On July 3, 2024, a different judge in this District issued a Memorandum Opinion and Order granting Travelers' motion for summary judgment, denying the Pittsfield Entities' motions for summary judgment, and entering judgment in Travelers' favor and against all Pittsfield Entities (including Pittsfield Hotel) for $301,537.95 plus interest and costs. (Dkt. 190.) Specifically, the Court concluded the Pittsfield Entities violated the terms of the Policy by materially misrepresenting the extent of their damages—primarily by presenting Williams' estimate for hypothetical asbestos work as factual proof of damages they were entitled to under the Policy—and thus the Policy was void and Travelers was entitled to receive back what it had paid out on the Policy. (*See id.*) Judgment was entered on July 8, 2024. (Dkt. 193.) The case was then reassigned to the undersigned.

The Pittsfield Entities collectively filed two motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e). First, Pittsfield Hotel brought its own motion claiming that the Court had manifestly erred by entering summary judgment on Travelers' counterclaim against it rather than solely against Pittsfield Development and Pittsfield Residential even though Pittsfield Hotel was not named in Travelers' counterclaim. (Dkt. 195.) Second, all three Pittsfield Entities filed a motion claiming the Court had manifestly erred in other ways in its summary-judgment ruling. (Dkt. 200.) Travelers opposes both motions and requested leave to exceed the Court's page limits for one of its briefs. (Dkt. 207.)

Following the Court's prior judgment, Travelers filed a bill of costs asking the Clerk of the Court to tax $30,273.87 in total costs against the Pittsfield Entities. (Dkt. 197.) The Pittsfield Entities objected to the bill on several grounds, and Travelers responded. (Dkts. 203, 205.)

## Legal Standard

A party may move to alter or amend a judgment up to 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). "A motion under Rule 59(e) may be granted only if there has been a manifest error of fact or law, or if there is newly discovered evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). A Rule 59(e) motion thus "allow[s] a party to bring to the district court's attention a manifest error of fact or law so that it may correct, or at least address, the error in the first instance." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (cleaned up).

## Discussion

The Court first addresses Pittsfield Hotel's and the collective Pittsfield Entities' motions to alter or amend judgment, then addresses Travelers' bill of costs.

### I. Pittsfield Hotel's motion to alter or amend judgment (Dkt. 195)[1]

Pittsfield Hotel argues that because it was not a named party to Travelers' breach-of-contract counterclaim, the Court erred in granted summary judgment against it—rather than merely against Pittsfield Development and Pittsfield Residential—on that counterclaim. The Court agrees.

Travelers' counterclaim asserted breach of contract against two parties only: Pittsfield Development and Pittsfield Residential. (Dkt. 116 ¶¶ 51–62.) Travelers requested the following relief: "that the Honorable Court enter judgment in favor of Travelers and against Pittsfield Development and Pittsfield Residential in the amount of $301,537.95." (*Id.* ¶ 62.)

Travelers never moved to amend its counterclaim or otherwise add Pittsfield Hotel as a defendant to its breach-of-contract counterclaim. But in its motion for summary judgment, Travelers sought summary judgment against the "Pittsfield Entities" collectively on both Plaintiffs' claims (which included Pittsfield Hotel) and Travelers' counterclaim (which did not). (*See* Dkt. 160 (seeking "summary judgment in favor of Travelers and against the Pittsfield

---

[1] Pittsfield Hotel alternatively moves for relief under Rule 60(a) to the extent the inclusion of Pittsfield Hotel as a losing counter-defendant in the judgment was a clerical oversight rather than an error by the court. Because the mistake was one made by the court, rather than a clerical misapplication or misunderstanding of the  order, and because Pittsfield Hotel did not move for relief under Rule 60(b), the Court resolves the issue under Rule 59(e). *See Shuffle Tech Int'l, LLC v. Wolff Gaming, Inc.*, 757 F.3d 708, 710 (7th Cir. 2014) ("[I]f the flaw lies in the translation of the original meaning to the judgment, then Rule 60(a) allows a correction; [but] if the judgment captures the original meaning but is infected by error, then the parties must seek another source of authority to correct the mistake." (quoting *United States v. Griffin*, 782 F.2d 1393, 1396–97 (7th Cir. 1986)).

Entities" and "judgment in favor of Travelers and against the Pittsfield Entities in the amount of $301,537.95," and also "summary judgment in favor of Travelers and against the Pittsfield Entities on their claims for breach of contract and reformation"). That was inaccurate—though all of the Pittsfield Entities/Plaintiffs had sued Travelers in their affirmative claims, Travelers' counterclaim had been brought against Pittsfield Development and Pittsfield Residential only. Travelers did not explain why its motion requested summary judgment against all Pittsfield Entities even though its counterclaim had omitted Pittsfield Hotel. Perhaps this inaccuracy was an oversight or an attempt at efficient shorthand—the parties and the Court could then simply refer to Travelers and the Pittsfield Entities collectively for all claims and issues, understanding that some of them did not apply to Pittsfield Hotel, rather than explicitly carving out Pittsfield Hotel when necessary. The parties seemed to adopt this shorthand—throughout briefing, neither party distinguished between (1) the Pittsfield Entities' claims against Travelers, which had been brought by all three of those entities, and (2) Travelers' counterclaim, which had been brought against Pittsfield Development and Pittsfield Residential but not Pittsfield Hotel.

The challenged ruling reflected the parties' practice, and, in the current Court's view, misapprehended that Pittsfield Hotel was a defendant to Travelers' counterclaim. For example, the Court stated that "[i]n its counterclaim, Travelers asserts a claim for breach of contract, alleging that *the Pittsfield Entities* intentionally mispresented that they were owed $1,140,000.00 in connection with the claim for water under the Policy." (Dkt. 190 at 12 (emphasis added).) The Court referred to the Pittsfield Entities collectively, rather than formally omitting Pittsfield Hotel, throughout its opinion and ultimately concluded that "Travelers had met its burden to establish . . . . that the Pittsfield Entities made a material misrepresentation about their claim." (*Id.* at 26.) The

judgment order likewise provided that "Judgment is entered in favor of Travelers and against the Pittsfield Entities (jointly and severally)." (Dkt. 193.)

The prior order and judgment thus included Pittsfield Hotel as a defendant to Travelers' counterclaim and issued judgment against Pittsfield Hotel in addition to Pittsfield Development and Pittsfield Residential on that counterclaim. That was a manifest error—Pittsfield Hotel was not a counter-defendant for Travelers' counterclaim and thus should have been omitted from summary judgment on the counterclaim. *See Ellenby Techs., Inc. v. Fireking Sec. Grp.*, 533 F. Supp. 3d 656, 659 (N.D. Ill. 2021) ("A motion for reconsideration is proper where the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990))); *see also Mathews v. Bronger Masonry, Inc.*, No. 1:09-CV-478-SEB-DML, 2010 WL 4811914, at *2 (S.D. Ind. Nov. 18, 2010) (denying summary judgment as to a party who had not yet been added to the complaint because "no judgment is available against a non-party"). That is especially true because the challenged ruling denied the Pittsfield Entities' reformation claim, which would have added Pittsfield Hotel to the Policy, as moot. (Dkt. 190 at 26–27.) Accordingly, Pittsfield Hotel was not found to be a party to the Policy and thus could not be subject to a claim for allegedly breaching the Policy—as Travelers evidently understood from the outset since it omitted Pittsfield Hotel from its counterclaim. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 651 (7th Cir. 2015) (rejecting concept that "a party to a contract [may] *sue a non-party* for breach of contract simply because the non-party has a close relationship with the other party to the contract who has breached" (emphasis original)); *Swiss*

*Reinsurance Am. Corp. v. Access Gen. Agency, Inc.*, 571 F. Supp. 2d 882, 885 (N.D. Ill. 2008) ("As defendants assert, nonparties to a contract are not liable for its breach."). Travelers asks the Court to ignore basic pleading rules and act as if Pittsfield Hotel was added to the counterclaim all along because Pittsfield Hotel tried (and failed) to become a party to the Policy as part of its own affirmative claims, which the Court will not do. *See Zavala-Alvarez v. Darbar Mgmt., Inc.*, 617 F. Supp. 3d 870, 887 (N.D. Ill. 2022) ("Before a court awards relief against someone, that party needs to hear about it first."); *Preston v. Bd. of Trs. Of Chicago State Univ.*, No. 14 C 3423, 2015 WL 327369, at *5 (N.D. Ill. Jan. 26, 2015) ("To the extent that the plaintiffs seek any relief against CSU, it is not a party."). In the end, the Court should not have issued judgment against Pittsfield Hotel on Travelers' counterclaim, and the Court now amends its prior judgment accordingly.[2]

## II.     Plaintiffs' motion to alter or amend judgment (Dkt. 200)[3]

The Pittsfield Entities claim multiple manifest errors in the ruling that ultimately voided the Policy. The Court finds no such errors.

First, the Pittsfield Entities claim the prior ruling did not hold Travelers to its burden of proof on its counterclaim because the Court did not consider and decide on the merits whether Travelers had met the "substantial performance" element of its breach-of-contract claim. The Pittsfield Entities are correct that the ruling did not spend much time addressing that element, but overlook why—as the ruling previously explained, though "substantial performance" and other elements were required to prove a breach-of-contract claim, the only element raised and disputed

---

[2] This decision does not mean that Pittsfield Hotel cannot be on the hook for the counterclaim judgment via some other mechanism—only that Pittsfield Hotel should not have been formally included in the Court's prior judgment because it was not a party to the underlying claim.
[3] The Court grants Travelers' motion for leave to exceed the page limit for its response brief (Dkt. 207).

by the parties in their summary-judgment briefing for that claim was whether any of the Pittsfield Entities breached the contract. (Dkt. 190 at 15.) The Pittsfield Entities never argued that there was a genuine issue as to that element—or any element except whether there was a breach. Thus, the issue was uncontested and the Pittsfield Entities cannot newly present it via a Rule 59(e) motion, which "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)); *see also LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) ("[A] motion to alter or amend a judgment is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment."). The Court therefore made no manifest error in not evaluating the "substantial performance" element more thoroughly.

The Pittsfield Entities' other claimed grounds to alter the Court's prior judgment are attempts to rehash arguments they made or could have made during summary-judgment briefing. In particular, the Pittsfield Entities claim that the Court should not have found that any misrepresentation related to their asbestos claim was intentional or that it was material. The Court already examined and resolved those issues in its prior order and the Court sees no evidence or controlling authority suggesting that the Court's decision was manifestly wrong, though the Pittsfield Entities may disagree with it. *See A&C Constr. & Installation*, 963 F.3d at 709 (holding that a district court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988))); *Oto*, 224 F.3d at 606 (affirming finding of no manifest error where motions for reconsideration "merely took umbrage with the

court's ruling and rehashed old arguments" and "did not demonstrate that there was a disregard, misapplication or failure to recognize controlling precedent"). The Court therefore denies the Pittsfield Entities' motion to alter or amend judgment.

### III.  Travelers' Bill of Costs (Dkt. 197)

In its bill of costs, Travelers requests $30,273.87 in total taxable costs from the Pittsfield Entities, including $23,433.67 in transcript fees. The Pittsfield Entities object to the following requested transcript fees: (1) court-reporter-attendance fees that exceed the Court's published limits; (2) various transcript fees other than standard per-page fees, such as processing fees, video-conferencing fees, and electronic-transcript fees; and (3) fees for deposition transcripts that were not used in the parties' motions for summary judgment. The Court addresses each category below.

Generally, "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Allowable taxable costs and fees include, among other things, "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920. In this District, "[c]ourt reporter appearance fees may be awarded . . . but the fees shall not exceed the published rates on the Court website unless another rate was previously provided by order of court." N.D. Ill. L.R. 54.1.[4]

First, the Court agrees that Travelers' requested reporter-attendance fees must be reduced to align with the Court's limits: $220 for full-day attendance and $110 for half-day attendance.

---

[4] The parties agree that those appearance-fee limits were $110 for a half day and $220 for a full day.

The Court agrees. Travelers' requested fees exceed the Court's limits and were not previously approved, so the Court reduces Travelers bill of costs by $1,016.88.[5] *See* N.D. Ill. L.R. 54.1.

Next, the Pittsfield Entities cite nothing and do not explain why any of Travelers' other requested deposition-related fees are not taxable other than summarily claiming they are "not allowed." Travelers' fees include delivery and handling fees, fees that facilitated a remote deposition rather than requiring the parties to travel to conduct a live deposition, and fees incurred based on possible difficulties presented by the COVID-19 pandemic. *See Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995) (affirming award of "costs 'incidental' to the taking of the depositions . . . such as per diem and delivery charges by the court reporter"); *Siwak v. Xylem, Inc.*, No. 19 C 5350, 2021 WL 5163289, at *1 (N.D. Ill. Nov. 5, 2021) (allowing costs associated with a video deposition conducted during the COVID-19 pandemic); *Avanzalia Solar, S.L. v. Goldwind USA, Inc.*, No. 20 C 5035, 2023 WL 5804232, at *5 (N.D. Ill. Sept. 7, 2023) (finding certain fees reasonable where "discovery took place during the COVID-19 pandemic"). The Court also agrees with Travelers that it was reasonable to obtain both a transcript and a video recording of Harmon's deposition given his and his testimony's importance to the case and his location outside of the Court's subpoena power. *See Cascades Computer Innovation, LLC v. Samsung Elecs. Co.*, No. 11 C 4574, 2016 WL 612792, at *4 (N.D. Ill. Feb. 16, 2016) (finding fees for both printed transcripts and video recordings reasonable for deponents who "were beyond the subpoena power of the Court and therefore could not have been compelled to testify at trial"); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 976 (N.D. Ill. 2010) ("A

---

[5] $1,016.88 = $225 (reduction for Sabbagh deposition) + $225 (reduction for Danial deposition) + $147.50 (reduction for Rasmussen deposition) + $81.88 (reduction for Carbone deposition) + $200 (reduction for Scheinblum deposition) + $90 (reduction for Morozov deposition) + $47.50 (reduction for Karambinis deposition).

prevailing party can recover costs for both a video-recording and a transcript of the same deposition, provided that the party can show both are necessary and reasonable in the context of the case."). The Pittsfield Entities do not argue why any of these fees were unnecessary or why taxing them is improper and cite no cases. *See Gray v. Burke*, No. 05 C 0059, 2007 WL 3334201, at *2 (N.D. Ill. Nov. 9, 2007) (overruling objections to bill of costs where the objecting party "cites no legal authority in support of her argument"). The Court therefore does not reduce Travelers' requested fees in this category.

The Court also does not exclude fees related to deposition transcripts that were not offered as evidence in the parties' summary-judgment motions. As Travelers explains, transcripts need not be actually used at summary judgment to be reasonably necessary for use in the case, and the Pittsfield Entities give no reason why the challenged transcripts were not reasonably necessary. *See Finchum*, 57 F.3d at 534 ("We have consistently maintained that costs may be awarded for deposing a witness who is not called at trial as long as the deposition was necessary when taken."). No deponent's testimony appears to have been unnecessary at the time of the deposition, so the Court will not exclude Travelers' requested transcript fees for those deponents even though the transcript did not ultimately become a summary-judgment exhibit.

The Court therefore sustains the Pittsfield Entities' objections to Travelers' bill of costs as to court-reporter-attendance fees, reduces Travelers' bill of costs by $1,016.88 to $29,256.99, and overrules the Pittsfield Entities' other objections to the bill of costs.

## Conclusion

The Court grants Pittsfield Hotel's motion to alter or amend judgment (Dkt. 195), denies the Pittsfield Entities' motion to alter or amend judgment (Dkt. 200), and grants Travelers' motion for leave to exceed page limits (Dkt. 207). The Court amends its prior order (Dkt. 190)

and judgment (Dkt. 193) in part as explained in this order and directs the Clerk of the Court to enter an amended judgment as to Travelers' counterclaim that reflects that judgment is entered in favor of Travelers and against only Pittsfield Development, LLC and Pittsfield Residential II, LLC. The Court's prior order and judgment are otherwise unmodified. The Court sustains in part and overrules in part the Pittsfield Entities' objections [203] to Travelers' bill of costs [197] and directs the Clerk of the Court to tax costs against the Pittsfield Entities in the amount of $29,256.99.

**SO ORDERED.**                                    **ENTERED: February 14, 2025**

_____

**HON. JORGE ALONSO**
**United States District Judge**